75 S.W.3d 905 (2002)
In the Interest of A.S.O.
Chad Campbell, Chief Juvenile Officer, Respondent,
v.
R.L.O. (Natural Mother), Appellant.
No. WD 60680.
Missouri Court of Appeals, Western District.
June 4, 2002.
*908 Ronald R. Holliday, St. Joseph, for Respondent.
Candace J. Barnes, St. Joseph, for Appellant.
David R. Schmitt, St. Joseph, Guardian ad litem.
Before HOWARD, P.J., and EDWIN H. SMITH and NEWTON, JJ.
EDWIN H. SMITH, Judge.
R.L.O. (mother) appeals the judgment of the Circuit Court of Buchanan County, Juvenile Division, terminating her parental rights to her minor child, A.S.O. The Juvenile Officer's (JO) petition to terminate parental rights was first heard by the Honorable J.W. "Bill" Roberts, resulting in a termination of parental rights (TPR) judgment, pursuant to § 211.447.4(3),[1] which was appealed to this court in In re A.S.O., 52 S.W.3d 59 (Mo.App.2001) (A.S.O. I). In that appeal, we reversed the judgment for failure of the juvenile court to make the findings required to terminate under § 211.447.4(3) and remanded the cause with directions for the court to make the requisite findings. While A.S.O. I was pending on appeal, Judge Roberts retired. Upon remand, his successor, the Honorable Daniel F. Kellogg, pursuant to Rule 79.01,[2] entered, without granting a new trial, a judgment[3] terminating the mother's parental rights, from which she now appeals (A.S.O. II).
The mother raises three points on appeal. In Point I, she claims that the juvenile court in A.S.O. II erred in entering its TPR judgment, terminating her parental rights to A.S.O., because it abused its discretion in failing, pursuant to Rule 79.01, to grant a new trial prior to entering its judgment. In Point II, she claims that the juvenile court in A.S.O. II erred in terminating her parental rights, pursuant to § 211.447.4(3), because such termination was not supported by clear, cogent and convincing evidence. In Point III, she claims that the juvenile court erred in terminating her parental rights, pursuant to § 211.447.4(3), because it failed to make the requisite finding of § 211.447.4(3)(a) for termination under that section.
We affirm.

Facts
R.L.O. is the natural mother of A.S.O., who was born on August 16, 1996. In *909 August of 1997, the Division of Family Services (DFS) opened a case on A.S.O. after it received a hotline call that A.S.O. was being abused and neglected by her mother. After an investigation by the DFS, A.S.O. was placed in foster care in the spring of 1998.
On December 23, 1999, the Buchanan County Juvenile Office filed a petition in the Circuit Court of Buchanan County, Juvenile Division, requesting that the court terminate the mother's parental rights pursuant to § 211.447.4(2) and § 211.447.4(3). The mother filed her answer to the petition on January 19, 2000. The matter proceeded to trial before the Honorable J.W. "Bill" Roberts on August 24, 2000, and after hearing testimony for two days, the case was continued to October 5, 2000, at which time the trial was concluded. At the conclusion of the evidence, the cause was taken under advisement. On October 23, 2000, Judge Roberts entered his judgment terminating the mother's parental rights, pursuant to § 211.447.4(3), and ordered that A.S.O. continue as a ward of the court and remain in the care and custody of the DFS. On November 29, 2000, the mother filed her notice of appeal. On December 31, 2000, while the mother's appeal was pending, Judge Roberts retired and was succeeded by the Honorable Daniel F. Kellogg on January 1, 2001.
On August 15, 2001, this court reversed the TPR judgment of Judge Roberts and remanded the case, with directions, for the court to enter its findings, conclusions and judgment in accordance with § 211.447. In re A.S.O., 52 S.W.3d 59 (Mo.App.2001). The judgment was reversed for failure of the juvenile court to make the findings required by § 211.447.4(3)(a)-(d). Id. at 65-66. Upon remand, Judge Kellogg entered on October 3, 2001, without granting a new trial, a judgment terminating the mother's parental rights to A.S.O., pursuant to § 211.447.4(3).
This appeal follows.

I.
In Point I, the mother claims that the juvenile court in A.S.O. II erred in entering its TPR judgment, terminating her parental rights to A.S.O., because it abused its discretion in failing, pursuant to Rule 79.01, to grant a new trial prior to entering its judgment. Specifically, the mother claims that it was an abuse of discretion not to grant a new trial in that the court's decision to terminate under § 211.447.4(3) turned on credibility assessments by the court of various witnesses who testified in A.S.O. I, which assessments the court could not fairly make without having personally observed the witnesses testify.
There is no dispute that Judge Kellogg's authority to enter his TPR judgment in A.S.O. II on remand is governed by Rule 79.01. It provides:
If by reason of going out of office, death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact are filed, then any other judge sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that those duties cannot be performed because such judge did not preside at the trial or for any other reason, such judge may grant a new trial.
Rule 79.01 (emphasis added). There is also no dispute that under the rule, the decision as to whether to grant the mother a new trial was within the sound discretion of the court. However, there is a dispute *910 over whether the rule requires the trial court to sua sponte consider granting a new trial or whether a request has to be made by one of the parties. The JO takes the latter position and contends that without a request, as was the case here, the issue of the court's failure to grant a new trial under the rule was not preserved, relegating the appellant to plain error review under Rule 84.13(c). We disagree.
In support of his position that Rule 79.01 should be interpreted as requiring a request for a new trial in order to preserve that issue on appeal, the JO asserts that the "term `grant,' [as used in Rule 79.01] given it's [sic] common usage, presupposes a request." Other than this bare assertion, the JO cites no authority for interpreting Rule 79.01 as requiring a request for a new trial, and our review does not disclose any cases addressing the issue. Thus, this issue of interpreting the rule appears to be a case of first impression.
In interpreting Supreme Court rules, we are to apply the same rules used for interpreting state statutes. State ex rel. Streeter v. Mauer, 985 S.W.2d 954, 956-57 (Mo.App.1999). Hence, in interpreting Rule 79.01, we are to ascertain the intent of the Supreme Court, giving the words used their plain and ordinary meaning. Id. at 957. If a term is defined in the rule, we are bound to apply that definition; however, if the term is not defined in the rule and has not been judicially interpreted, we are free to give the term its plain and ordinary meaning using the dictionary definition to guide us. Cessor v. Dir. of Revenue, 71 S.W.3d 217, 223 (Mo.App.2002).
"Grant" is not defined in the rule. Nor has it been defined in the context of other rules, statutes, or cases, such that we must turn to its dictionary definition. "Grant," as defined in WEBSTER'S NEW WORLD COLLEGE DICTIONARY 587 (3d ed.1997), has several meanings: 1. to give (what is requested, as permission, etc.); 2. to give or confer formally or according to legal procedure. If the term is read in isolation, the first meaning ascribed could be applied and would favor the JO's position that "grant" as used in the rule presupposes a request. However, when the term is read in context, the second definition would seem to logically apply. In that regard, we note that unlike Rule 78, dealing with "NEW TRIALSAFTER TRIAL MOTIONSPRESERVATION OF ERROR," which by its express terms authorizes the court to "grant a new trial of any issue upon good cause shown," Rule 78.01 (emphasis added), there is no such requirement in Rule 79.01. Likewise, while Rule 78 provides detailed directives for the filing of a motion requesting the grant of a new trial under the rule, Rule 79.01 simply directs that if the "judge is satisfied that those duties [required of the judge by the rules] cannot be performed because such judge did not preside at the trial or for any other reason, such judge may grant a new trial." This language, in our view, places an affirmative duty on the successor court to determine, sua sponte, whether it can fairly proceed in the case given the fact that it did not preside at trial. This is a logical approach given the circumstances under which Rule 79.01 comes into play. Due process is automatically called into question by the rule's permitting a successor judge to act in a case where the judge did not preside at trial. This is so in that our system of justice, whether civil or criminal, envisions a shepherding role by a trial court, intimately familiar with all the details of the case, guiding and directing the case to its finality in a manner that insures complete confidence in the outcome. To balance the due process concern raised by Rule 79.01 with the recognition of the *911 fact that a new trial would not be required in all instances of a judge being unable to take a case to its conclusion, the rule was written to provide a mandatory sua sponte review by the successor judge to insure that due process will be served in his or her acting without conducting a new trial. In interpreting Rule 79.01 as we do, we find no merit in the JO's contention that the mother failed to preserve for appellate review her claim of error in this point.
In further opposition to our review of the mother's claim, the JO also contends that regardless of Rule 79.01's authorization of a new trial, the juvenile court was precluded from granting one in any event in that our mandate in A.S.O. I expressly limited the court on remand to "enter[ing] its findings, conclusions and judgment in accordance with § 211.447," quoting from our mandate in A.S.O. I. We disagree.
On remand, a trial court has a duty to render judgment in accordance with the mandate of the appellate court, as read in conjunction with the opinion filed in the case and in accordance with any directions set out therein. Tillis v. City of Branson, 975 S.W.2d 949, 952 (Mo.App.1998). Thus, any orders or adjudications entered by the trial court subsequent to the mandate must be confined to those necessary to execute the judgment of the appellate court. Id. at 952 (citation omitted) (emphasis added). Applying the foregoing principles to our case, absent some express limitation in our mandate to the contrary, the successor juvenile judge, in executing our judgment in A.S.O. I, was necessarily required to abide by the directives of Rule 79.01, including determining, sua sponte, whether he could make the mandated findings and conclusions and enter judgment accordingly, without granting a new trial. Our mandate and opinion in A.S.O. I reflect no express limitations with respect to the trial court's responsibility to sua sponte determine whether a new trial was required. In fact, Judge Roberts' retirement and the effect of Rule 79.01 on remand never came up in A.S.O. I such that the issue of whether his successor could make the findings and conclusions and enter judgment thereon as mandated, without considering whether to grant a new trial as provided in Rule 79.01, was never addressed.
Having found no merit to the JO's challenges to our reviewing the appellant's claim in this point, we now turn to the merits of her claim. As indicated, supra, the granting of a new trial under Rule 79.01 is discretionary, the rule expressly providing that the successor court "may" grant a new trial. See Hertel ex rel. Hertel v. Nationsbank N.A., 37 S.W.3d 408, 411 (Mo.App.2001) (holding that the term "may" indicates discretion in taking a course of action). An abuse of discretion occurs when the trial court's decision is clearly against the logic of the circumstances then before it, and is so arbitrary and unreasonable that it shocks our sense of justice and indicates a lack of careful consideration. Sloan v. Bankers Life & Cas. Co., 1 S.W.3d 555, 567 (Mo.App.1999).
In claiming that the juvenile court abused its discretion in not granting, sua sponte, a new trial before entering its TPR judgment, the mother argues that the court's decision to terminate her parental rights turned primarily on credibility calls as to the witnesses who testified in A.S.O. I, which the successor court never had an opportunity to observe in person. Quoting the oft-cited principle that an appellate court shall defer to the trial court's assessment of witness credibility because of the trial court's ability to personally observe the witness testify, A.B.C. v. C.L.C., 968 S.W.2d 214, 220 (Mo.App.1998), the mother claims that we should not defer to Judge Kellogg's credibility assessments because *912 he had no opportunity to observe the witnesses testify. The JO, however, contends that it was not necessary for Judge Kellogg to personally observe the witnesses testifying so as to provide an opportunity to adequately judge their credibility inasmuch as the necessary evidentiary support for the basis on which he terminated the mother's parental rights did not hinge on credibility calls by the court, as asserted by the mother, in that the facts and circumstances that led to the court's TPR judgment were not in dispute at trial.
Section 211.447, governing the termination of parental rights, provides, in pertinent part:
5. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, ... if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.
"[I]n a termination of parental rights proceeding, one of the grounds for termination, if adequately pleaded and proved, is sufficient to support termination." In re N.M.J., 24 S.W.3d 771, 777 (Mo.App.2000). In this case, the juvenile court terminated the mother's parental rights based on the statutory ground found in § 211.447.4(3), "failure to rectify or remedy." That subdivision reads:
The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.
§ 211.447.4(3). In order to terminate parental rights for failure to remedy under that subdivision, the juvenile court is required to consider and make findings with respect to each of the four conditions set forth in § 211.447.4(3)(a)-(d). In Interest of S.C., 914 S.W.2d 408, 411 (Mo.App.1996). "These factors are not separate grounds for termination in and of themselves but rather categories of evidence to be considered together with all other relevant evidence. Although the court is required to consider and make findings as to all four *913 conditions or acts, the proof of one is sufficient for termination." In re N.M.J., 24 S.W.3d at 778 (citations omitted).
As to the evidentiary support for its termination of the mother's parental rights for failure to remedy under § 211.447.4(3), the successor judge indicated in his judgment that he was taking judicial notice of the prior proceedings in A.S.O. I and that he was considering the following trial exhibits: the Social Case History Report, various psychological evaluations of the mother and A.S.O., the written service agreements, six (6) reports of negative drug screens of the mother, and the CASA report. In terminating the mother's parental rights under § 211.447.4(3), the juvenile court found:
[T]he evidence shows that the [mother] has been unable to maintain a stable residence or maintain employment. She has failed to substantially comply with numerous written service agreements with the Division of Family Services, and has failed to show any improvement in her living conditions with the exception that she has been able to stop her previous drug habit.
As to the four requisite findings to terminate under § 211.447.4(3), the court found in its judgment:
A. The [mother] has failed to substantially comply with the terms of various social service plans, as more particularly described as follows:
(1) Exhibit 2 (Social Service Plan dated 8-27-97). [Mother] failed to comply with the terms of this social service plan in that she failed to keep appointments with her caseworker once a month; [mother] also failed to call or leave a note when she missed appointments;
(2) Exhibit 2 (Social Service Plan dated 4-10-98). [Mother] failed to comply with the terms of this social service plan by using drugs, failing to reside with her sister, moving several times in the three-month period, and she could not care for her child, A.S.O., during this period;
(3) Exhibit 5 (Social Service Plan dated 12-3-98). [Mother] failed to comply with the terms of this social service plan by failing to complete the CSTAR program and failing to reside at her aunt's house;
(4) Exhibit 7 (Social Service Plan dated 5-3-99). [Mother] failed to comply with the terms of this social service plan by failing to live with her mother and by failing to submit to urinalysis screening;
(5) Exhibit 11 (Social Service Plan dated 4-20-00). [Mother] failed to comply with the terms of this social service plan by failing to maintain stable employment and by failing to provide a stable and adequate home for possible reunification of A.S.O. She also failed to keep the Division of Family Services aware of her whereabouts at all times and failed to submit to three urinalysis screening [sic] per month. She also failed to arrange and maintain weekly visits with A.S.O., and failed to participate in weekly counseling sessions to work on increasing self-esteem and parenting skills.
B. The Division of Family Services has failed to aid the [mother] on a continuing basis in adjusting [her] circumstances or conduct to provide a proper home for the child as more particularly described as follows:
(A) The Division of Family Services attempted to assist the [mother] by entering into numerous social service agreements beginning on August 27, 1997 and ending on August 24, 2000, to adjust the [mother's] circumstances or conduct to provide a proper home for the child, but the [mother] failed to comply;

*914 (B) The Division of Family Services provided counseling services, parent-aid assistance, drug treatment programs, and parenting skills education, but all aid failed to adjust the [mother's] circumstances.
C. The Court finds that the [mother] suffers from a mental condition known as mixed personality disorder, with anti-social, histrionic, narcissistic, and self-defeating features. The combination of these conditions and [mother's] history show that there is no reasonable likelihood that the conditions can be reversed, and renders the parent unable to knowingly provide the child the necessary care, custody and control.
D. The Court finds that while [mother] has never completed a drug treatment program, she is free of drugs now, and thus, the [mother] does not have a chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child.
In reviewing the record as to the court's findings that were found in the affirmative, factors (a), (b), and (c) of § 211.447.4(3), we find that none of the three relied in any significant part on credibility calls by the court in A.S.O. II with respect to testimony of witnesses in A.S.O. I such that it was not an abuse of discretion for the court to enter its TPR judgment without conducting a new trial, as the mother asserts in this point. In that regard, as to the basis for the court's finding with respect to factor (a), § 211.447.4(3)(a), the record from A.S.O. I reflects that the mother admitted to not complying with the service plans by, inter alia, failing to reside with her sister and her mother, failing to submit to required urinalysis, and failing to maintain stable employment. As to the basis for the court's finding with respect to factor (b), § 211.447.4(3)(b), the mother admitted that despite the efforts of the DFS, she was unable to gain steady employment for herself and appropriate housing for her child. As to the basis for the court's finding with respect to factor (c), § 211.447.4(3)(c), Dr. Ron Ruhnke, a psychologist, testified that the mother suffered from mixed personality disorder, a mental disorder which he believed would necessarily hinder her parenting skills. The mother produced no evidence, expert or otherwise, to contradict Dr. Ruhnke's diagnosis of her mental condition.
For the reasons stated, we find no abuse of discretion in the juvenile court's entering its TPR judgment on remand without granting a new trial pursuant to Rule 79.01.
Point denied.

II.
In Point II, the mother claims that the juvenile court in A.S.O. II erred in terminating her parental rights, pursuant to § 211.447.4(3), because such termination was not supported by clear, cogent and convincing evidence. Specifically, she claims that absent a new trial, the successor judge, Judge Kellogg, could not find, as he did, as to factor (c), § 211.447.4(3)(c), that the mother was "unable to knowingly provide the child the necessary care, custody and control," in that he was bound by Judge Roberts' contrary oral finding in A.S.O. I since he had an opportunity to observe the witnesses testify and Judge Kellogg did not.
"The standard of review in termination of parental rights proceedings requires that we sustain the judgment of the juvenile court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." In re J.D., 34 S.W.3d 432, 434 (Mo.App.2000) (citation omitted). Upon review, we will consider *915 the evidence and all reasonable inferences drawn therefrom in the light most favorable to the juvenile court's judgment and disregard all evidence and inferences to the contrary. Id.
In contending as she does in this point, the mother has the burden of directing us to that portion of the record that would support her claim, specifically that portion of the record that would show that Judge Roberts made the oral finding on which she relies to succeed on this point. The mother fails to cite us to any portion of the record that supports her assertion that Judge Roberts made the oral finding alleged, which in and of itself is a sufficient basis for us to decline review of her claim in this point. Hall v. Mo. Bd. of Prob. and Parole, 10 S.W.3d 540, 545 (Mo.App.1999). In any event, despite the fact that it is not our responsibility to scour the record to ascertain the basis for the appellant's claim of error, we did so and cannot find the oral finding of Judge Roberts that the mother alleges as a basis for her claim on this point. Crawford County Concerned Citizens v. Mo. Dept. of Natural Res., 51 S.W.3d 904, 908 (Mo.App.2001).
Even if the record reflected the oral finding of Judge Roberts as alleged, the mother's claim in this point must still fail. First, the mother failed, as required, to cite to any authority or a reason for lack of such citation that would support her contention that Judge Kellogg was somehow bound by the oral finding of Judge Roberts in A.S.O. I. Rule 84.04(d)(5); Crawford County Concerned Citizens, 51 S.W.3d at 908. Second, as discussed, supra, although the juvenile court had to make findings with respect to all four factors of § 211.447.4(3), it only had to be correct as to one for us to affirm its termination of parental rights, In re N.M.J., 24 S.W.3d at 777, such that even if the mother were right on this point, she would not be entitled to the appellate relief she seeks unless she successfully challenges on appeal the juvenile court's affirmative findings with respect to factors (a), (b), and (c). While she challenges the sufficiency of the record to support the juvenile court's finding as to factor (c) in this point and the sufficiency of the finding as to factor (a) in Point III, she does not challenge in any respect the court's finding with respect to factor (b). As such, that finding stands as made and is sufficient for us to affirm. Id.
Point denied.

III.
In Point III, the mother claims that the juvenile court erred in terminating her parental rights, pursuant to § 211.447.4(3), because it failed to make the requisite finding of § 211.447.4(3)(a) required for termination under that section. Specifically, she claims that the juvenile court did not make a sufficient finding as to factor (a) in that it failed to specify the "extent" to which she had made progress in complying with the terms of the social service plans she entered into with the DFS.
The mother's claim in this point fails in that the juvenile court's finding as to factor (a) does specify the "extent" to which she had made progress with respect to the terms of her social service plans. In finding that the mother failed to comply with the provisions of her specified service plans, the court essentially found that she had made "no" progress. See In re N.M.J., 24 S.W.3d at 782 (holding that the juvenile court's finding that the mother failed to comply with a social service plan was, in effect, a finding that she had made "no" progress in complying with the terms of the plan). A "finding of `no' progress is, in fact, a measure of the extent of the [mother's] progress." Id. Hence, the juvenile *916 court's finding with respect to factor (a) of § 211.447.4(3) was sufficient.
Point denied.

Conclusion
The judgment of the juvenile court terminating the parental rights of the mother to A.S.O., pursuant to § 211.447.4(3), is affirmed.
HOWARD, P.J., and NEWTON, J., concur.
NOTES
[1] All statutory references are to RSMo 2000, unless otherwise indicated.
[2] All rule references are to Missouri Rules of Civil Procedure (2001), unless otherwise indicated.
[3] Judge Kellogg denominated his judgment as an "amended" judgment, purportedly amending the prior judgment entered by Judge Roberts. However, upon reversal on appeal, Judge Roberts' judgment became a nullity, in toto, Legacy Homes P'ship v. Gen. Elec. Capital Corp., 10 S.W.3d 161, 163 (Mo.App.1999), such that there was no judgment for Judge Kellogg to amend.