**In the Interest of E.T.C.**

**No. ED 83716.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 15, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 2004.

Steven W. Neimeyer, Stanley I. Schechter, Clayton, MO, for appellants.

Janice L. Palozola, St. Louis, for Guardian Ad Litem.

Kathleen B. Kiser, Clayton, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Ellen Mary Behan–Carter ("Mother") and Lance E. Carter ("Father") appeal the Findings/Recommendations, Order, Judgment and Decree of the Family Court of St. Louis County terminating their parental rights as to their minor child, E.T.C. ("Child").[1] We affirm.

### Statement of the Facts and Proceedings Below

Pursuant to section 211.031 RSMo 2000,[2] a juvenile officer filed a Petition alleging that Mother neglected or refused to provide for Child's education. The Petition noted that Father did not have primary physical custody of Child during the referenced school term. On July 20, 2001, the juvenile officer filed an Amendment to the Petition adding that mother had not been taking her prescribed anti-depressant or anti-psychotic medicine and exhibited delusional thinking. The Amendment further alleged that Father had knowledge of Mother's behavior and mental condition yet failed to make arrangements for Child's protection. As a result, Child was removed from Mother's custody.

On October 25, 2001, the court adjudicated these allegations. In its Recommendation/Order, Judgment and Decree, the court placed legal custody of Child with the Division of Family Services ("DFS") and physical custody of Child with Child's paternal aunt and uncle. In its Order, the court directed DFS and the juvenile officer "to execute and place in the legal file for the court's approval a service plan within 45 days for each parent." The court further ordered Father to submit to a psychological evaluation and ordered Mother to submit to a psychiatric evaluation, sign information releases, take all prescribed medication and follow all treatment recommendations. The court also ordered each parent to participate in individual counseling.

Father signed his service plan on August 20, 2001. According to the plan, Father was required to: (1) visit Child at least two times each month; (2) provide financial contributions towards the support of Child; (3) obtain a drug/alcohol evaluation and psychological/psychiatric evaluations; (4) submit to drug/alcohol screening within one day of DFS request; (5) maintain housing meeting DFS minimum standards for Father and Child; (6) arrange for DFS approved daycare; (7) attend and participate in family counseling, parenting classes and any additional classes recommended as a result of the required drug/alcohol and/or psychological/psychiatric eval-

---

1. Child's date of birth is April 2, 1995.

2. All further statutory references are to RSMo (2000) unless otherwise noted.

uations; (8) inform DFS of any address, telephone, or job changes; (9) cooperate and use the services offered by DFS or the court; (10) comply with all court orders currently in effect and provide proof of attendance and participation in the required classes; and (11) sign all information releases requested by DFS.

Mother signed her service plan on May 29, 2002. According to the plan, Mother was required to: (1) visit Child once recommended by Child's therapist and Mother's therapist, as supervised by DFS; (2) provide financial contributions towards the support of Child; (3) obtain psychological/psychiatric evaluations; (4) submit to drug/alcohol screening within two days of DFS request; (5) maintain housing meeting DFS minimum standards for Father and Child; (6) arrange for DFS approved daycare; (7) attend and participate in psychological/psychiatric counseling, parenting classes, job training and any additional classes recommended as a result of the required psychological/psychiatric evaluations; (8) inform DFS of any address, telephone, or job changes; (9) cooperate and use the services offered by DFS or the court; (10) comply with all court orders currently in effect and provide proof of attendance and participation in the required classes; and (11) sign all information releases requested by DFS.

The juvenile officer filed a Petition to Terminate Parental Rights on November 20, 2002. The juvenile officer sought to terminate parental rights because (a) Child had been adjudicated abused and neglected on October 25, 2001; (b) Child had been under the court's jurisdiction continually for at least one year; (c) Child had been in foster care for at least fifteen of the most recent twenty-two months; (d) Mother abandoned Child for a period of six months or longer before the filing of this petition;

(e) Father abandoned Child for a period of six months or longer before the filing of this petition; and (f) John Doe, the unknown father of Child, abandoned Child for a period of six months or longer before the filing of this petition.[3]

The court initially set the petition for hearing on December 17, 2002. On December 17, 2002, however, the court set the cause for a contested Termination of Parental Rights hearing on February 19, 2003. On February 19, 2003, the court reset the cause for a contested Termination of Parental Rights hearing. On April 7, 2003, the court issued its order granting Mother's motion for continuance until June 24, 2003, noting that "[n]either parent shall be granted any further continuances."

Accordingly, on June 24, 2003, the court held a hearing on the Petition to Terminate Parental Rights. Father appeared in person and by counsel. Mother appeared by counsel. Mother did not personally appear because she was in Ireland. Mother's counsel orally moved for a continuance until such time as she could return to St. Louis. The court denied the motion.

At trial, the juvenile officer first called Dr. Davena Rastogi–Cruiz. Dr. Rastogi–Cruiz explained that, as of the June 24, 2003 hearing, Mother twice had been admitted to the Metropolitan St. Louis Psychiatric Center. Dr. Rastogi–Cruiz treated Mother during both stays. Dr. Rastogi–Cruiz diagnosed Mother with bipolar affective disorder, manic with psychotic features and treated Mother with mood stabilizers and anti-psychotic medication. Upon discharging Mother from the Metropolitan St. Louis Psychiatric Center, Dr. Rastogi–Cruiz ordered Mother to continue taking both medications

---

3. Mother previously alleged that Father was not the natural father of Child.

and follow up with an outpatient psychiatrist.[4]

Dr. Rastogi–Cruiz stated that although Mother's illness was treatable, it was not curable. She explained the importance of Mother staying on the prescribed medications. According to Dr. Rastogi–Cruiz, without these medications, Mother exhibited delusions, irritability and racing thoughts, some hyper-religiosity, hypersexuality, and hyper-talkativeness. In her opinion, if Mother did not take her medication, Mother could not provide a stable environment and Child was at risk of being neglected. On cross-examination, Dr. Rastogi–Cruiz acknowledged that one of the symptoms of Mother's illness was noncompliance with treatment.

The juvenile officer next called Penny Moore the DFS caseworker assigned to Child's case. Ms. Moore explained that Child had been in foster care continuously since the court took jurisdiction. Specifically, from July 2001 through August 2002, Child lived with Patricia and Thomas Openlander, Child's paternal aunt and uncle, and from August 2002 through the hearing date, Child lived with Sherry Carter, another paternal aunt.[5]

Ms. Moore testified that records indicated that Father worked as a truck driver. Beginning in November 2001, Father began working as an over-the-road driver. Father lived out of his truck and did not provide adequate housing for Child. Ms. Moore stated that Father visited Child ten times and although Father provided occasional gifts for Child, he did not provide any financial support and had not fulfilled the terms of his written service plan.

Ms. Moore explained that she had never met Mother. Ms. Moore testified that Mother had been living in Ireland since March 2003 and that, when in the United States, Mother could not provide adequate housing for Child. Pursuant to the court's October 25, 2001 Order, Mother could only visit Child when recommended by her therapist and then, only under the supervision of DFS. However, because Mother never entered therapy she never visited Child. Ms. Moore further testified that although Mother provided occasional gifts for Child, records indicate that she never provided any financial support for Child. Mother also failed to fulfill her obligations under the written service plan.

Father testified and explained that he could care for and parent Child. Father admitted that he had not sent much money for Child. Father claimed that he filled out and signed his service agreement and waited to be contacted. Father complained that no referral was made for any services for him. Father's attorney asserted that no evidence indicated that Father was a danger to Child and DFS had not made any efforts to assist Father in becoming the primary parent for Child.

When given an opportunity to present evidence on behalf of Mother, Mother's counsel stated that he did not have any evidence to present because his client was not present. However, Mother's attorney admitted Mother's mental disability and asserted that DFS failed to accommodate this disability as required by the Americans with Disabilities Act ("ADA").

The Guardian ad Litem recommended that the best interest of Child necessitated

---

4. Between her first and second hospitalizations, Mother visited the outpatient psychiatrist only once and refused to take the prescribed medications.

5. Both Patricia Openlander and Sherry Carter briefly testified at trial. Each acknowledged the time that Child lived with her and each acknowledged that she did not receive any sort of financial support from either Mother or Father.

the termination of parental rights. On October 2, 2003, the court entered its order terminating the parental rights of both Mother and Father concluding: (1) Child has been adjudicated abused or neglected as required by section 211.447.4(2); (2) Child has been under the court's jurisdiction for a period of one year as required by section 211.447.4(3); and (3) Child has been in foster care for at least fifteen of the most recent twenty-two months as required by section 211.447.2(1). The court likewise addressed the findings required by sections 211.447.4(2)(a-d), 211.447.4(3)(a-d) and 211.447.6(1–7). Both Mother and Father separately appealed the termination of their respective parental rights.[6]

### Standard of Review

■ Our review of a trial court's decision to terminate parental rights is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless no substantial evidence supports the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of K.O.*, 933 S.W.2d 930, 934 (Mo.App. E.D.1996). We view facts and reasonable inferences in the light most favorable to the trial court's decision and defer to the trial court's superior ability to determine the credibility of witnesses. *Id.*

■ The court's primary concern in cases involving the termination of parental rights is the best interest of the child. *Id.* Accordingly, a trial court may terminate parental rights only when it finds clear, cogent and convincing evidence to support the termination. *Id.* "Clear, cogent, and convincing evidence is that evidence which tilts the scales in the affirmative and leaves the fact finder's mind with an abid-

ing conviction that the evidence is true." *In the Interest of D.C.*, 49 S.W.3d 694, 698 (Mo.App. E.D.2001).

### Mother's Appeal

#### A. Motion for Continuance

■ In her first point on appeal, Mother contends that the trial court erred when it denied her oral motion for continuance to allow her time to appear and participate at the hearing. In her appeal, Mother contends that the trial court's denial of her motion for continuance was arbitrary and an abuse of discretion.

Mother appeared at the June 24, 2003, court hearing on the Petition to Terminate Parental Rights through counsel. Mother's counsel orally moved for a continuance on the grounds that Mother was in Ireland and could not be present at the hearing. The court denied the motion stating that "Mother was granted a continuance on April 7, 2003. And at that time the court noted that neither parent would be granted any further continuances."

■ "The denial of a request for a continuance rarely is reversible error; yet the trial court enjoys neither an absolute nor an arbitrary discretion, and the trial court's action will be reversed if there has been an abuse of discretion." *D.C.*, 49 S.W.3d at 698–99. The court's decision to deny Mother's request for continuance was not an arbitrary decision in light of the fact that, months before this hearing, the court warned the parties that neither Mother nor Father would be granted additional continuances. We also note, as an additional ground that, in the absence of consent from opposing counsel, Rule 65.03 of the Missouri Rules of Civil Procedure requires that an application for continuance be made by written motion and accompanied by an affidavit. Mo.R.Civ.P.

---

**6.** Both appeals have been consolidated under this cause number.

65.03; *In the Interest of M.P.W.*, 983 S.W.2d 593, 599 (Mo.App. W.D.1999). Here, Mother's counsel orally moved for continuance at the hearing, without consent from opposing counsel. Accordingly, Mother's request for continuance did not comply with Rule 65.03. Point denied.

### B. Section 211.447.2(1)

■ In her second point on appeal, Mother argues that the trial court erred in terminating her parental rights based on the fact that Child was in foster care for at least fifteen of the most recent twenty-two months. Mother and the juvenile officer agree that in light of the recent Supreme Court decision, *In the Interest of M.D.R.*, 124 S.W.3d 469 (Mo. banc 2004), the trial court erred in holding that foster-care custody for at least fifteen of the twenty-two previous months is a ground for terminating parental rights. However, because the trial court found several other statutory bases for termination, the trial court's error does not support reversal of the judgment. *Id.* at 476.

### C. Section 211.447.4(1)

■ In her third point on appeal, Mother argues that the trial court erred in terminating her parental rights because there was insufficient clear, cogent and convincing evidence to support the findings made pursuant to section 244.447.4(1). In support of this contention, Mother claims that she did not abandon Child. Rather, because she did not receive adequate treatment, her mental disability rendered her unable to comply with the service plan and maintain regular contact with Child. Because resistance to treatment is one of the symptoms of her disability, Mother asserts that the Children's Division of the DFS should have done more to ensure that appropriate treatment continued. Finally, Mother asserts that her actions were the result of her untreated mental illness and her "words and conduct never evinced an intent to abandon or neglect [Child]."

Section 211.447.4(1)(b) provides, a child has been abandoned if, for a period of six months or longer: "the parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." At the hearing, the juvenile officer proved that Mother failed to maintain any sort of contact with Child.

Admittedly, the court order prohibited Mother from physical contact with Child, but nothing prohibited Mother from making telephone inquiries or writing letters to Child. Moreover, the order allowed for visitation on the approval of Mother's therapists. Evidence indicates that, on August 7, 2001, DFS sent Mother the names of therapists and people with whom she could arrange a psychiatric evaluation. Despite receiving referrals to these therapists, Mother never responded, and chose not to enter therapy. Finally, although she provided occasional gifts, Mother did not provide Child with any financial support. Accordingly, there is sufficient clear, cogent and convincing evidence to support the finding that Mother abandoned Child. Point denied.

### D. Section 211.447.4(2)

■ In her fourth point on appeal, Mother argues that the trial court erred in terminating her parental rights because there was insufficient clear, cogent and convincing evidence to support the findings made pursuant to section 244.447.4(2). In support of this contention, Mother claims that she never abused her Child. Again Mother asserts that she is "only physically and financially unable to provide [Child] with adequate food, clothing, shelter, education or other necessary care and control" because a symptom of her disability is

resistance to treatment and the Children's Division of the DFS did not provide enough assistance.

Section 211.447.4(2) provides, a juvenile officer may file a petition to terminate the parental rights when "the child has been abused or neglected. In determining whether to terminate parental rights ... the court shall consider ... (a) [a] mental condition ... which renders the parent unable to knowingly provide the child the necessary care, custody and control; (b) [c]hemical dependency ...; (c) [a] severe or recurrent acts of physical, emotional or sexual abuse towards the child or any child in the family ...; (d) [r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education...." A finding that one of the four factors is present is sufficient to support termination of parental rights. *In the Interest of B.C.K.*, 103 S.W.3d 319, 327 (Mo.App. S.D.2003).

In this case, the record supports the conclusion that Child was adjudicated abused and neglected on October 25, 2001. The record supports the court's findings, pursuant to section 211.447.4(2)(a), that Mother suffers from a treatable mental condition but that, without treatment, Mother has been admitted to the Metropolitan St. Louis Psychiatric Center on two occasions. It is clear from the record that upon her release from the Metropolitan St. Louis Psychiatric Center Mother unilaterally discontinued the necessary medications and failed to enter therapy as prescribed at discharge. The record further establishes, in accordance with section 211.447.4(2)(d), Mother has repeatedly or continuously failed to provide Child with adequate food, clothing, shelter, or control necessary for Child's development. Further, Mother never provided the foster parents or the DFS with any financial support for Child. Accordingly, there is sufficient clear, cogent and convincing evidence to support the finding that Mother was unable to knowingly provide Child the necessary care, custody and control and further that Mother neglected Child. Point denied.

### E.  Section 211.447.4(3)

In her fifth point on appeal, Mother argues that the trial court erred in terminating her parental rights because there was insufficient clear, cogent and convincing evidence to support the findings made pursuant to section 244.447.4(3). In support of this contention, Mother asserts that there is insufficient evidence that the continuation of the Mother–Child relationship would diminish Child's prospects for integration into a stable and permanent home. Mother explains that she never physically harmed Child and, given proper treatment for her disability, Mother can provide Child with a stable and permanent home. Mother further contends that the court overlooked the inadequacy of the service plan in accommodating her disability.

Section 211.447.4(3) provides, a juvenile officer may file a petition to terminate the parental rights when "the child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, ... or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights, the court shall consider ... (a) [t]he terms of the social service plan ... and the extent to which the parties have made progress in complying with those terms; (b) [t]he success or failure of the ... juvenile officer, the division ... to aid the parent on a

continuing basis ... to provide a proper home for the child; (c) [a] mental condition which is shown by competent evidence ... which renders the parent unable to knowingly provide the child the necessary care, custody or control; (d) [c]hemical dependency...." While the trial court is required to make findings regarding each of these four factors, proof of one of these four factors is sufficient for the court to terminate parental rights. *In the Interest of A.S.O.*, 75 S.W.3d 905, 912–13 (Mo.App. W.D.2002).

As a preliminary matter, it is undisputed that Child has been under the continual jurisdiction of the court for over one year. Likewise, the court properly considered that, despite the instructions provided upon discharge from Metropolitan St. Louis Psychiatric Center, Mother failed to enroll and participate in therapy. Accordingly, Mother failed to comply with her service plan. Further, the evidence indicates that the DFS provided in-home services through Edgewood Children's Center, however Mother did not cooperate with the workers. Finally, the juvenile officer adequately proved and the court appropriately found that Mother suffers from a myriad of psychological issues.

Although Mother's disability is treatable, treatment requires continual medication and therapy, both of which Mother unilaterally discontinued. According to Dr. Rastogi–Cruiz, when off of her prescribed medications, Mother can exhibit delusions, irritability, racing thoughts, hyper-religiosity, hyper-sexuality, and hyper-talkativeness. Patricia Openlander testified that one year at Easter, Mother started yelling "crazy things" and it was apparent that she could not control her talking. As a result, Child has stated to Ms. Openlander that he is scared of Mother. Accordingly, there is sufficient clear, cogent and convincing evidence to support the finding that continuation of the Mother–Child relationship diminishes Child's chances of early integration into a stable and permanent home. Point denied.

### F. Americans with Disabilities Act Defense

In her sixth point on appeal, Mother contends that the trial court erred in failing to rule on her affirmative defenses under the ADA. In support of this contention, Mother asserts that the DFS violated Title II of the ADA when it refused to accommodate Mother's disability as part of reunification efforts prior to terminating her parental rights.

■■ It appears that Mother's ADA claim is simply another, albeit creative, way of arguing that she should not be held accountable because DFS failed to provide her with adequate services. However even assuming, *arguendo*, DFS' services were inadequate, a failure by DFS to provide treatment or services is "no defense to a termination proceeding." *In the Interest of D.B.*, 916 S.W.2d 430, 434 (Mo. App. E.D.1996). Point denied.

### Father's Appeal

### A. Section 211.447.2(1)

■■ In his first point, Father contends that the trial court erred when it found that Child has been in foster care for a period exceeding fifteen of the most recent twenty-two months as a ground for the termination of his parental rights. Father cites *M.D.R.*, 124 S.W.3d 469 to support this contention. The juvenile officer concedes and we agree that, in light of *M.D.R.*, section 211.447.2(1) does not alone support a termination of parental rights. As previously stated, however, the court properly found several other grounds to support the termination of Father's parental rights and "[t]he satisfaction of one statutory ground for termination is suffi-

cient to terminate parental rights, if the termination is in the child's best interest." *Id.* at 476. Point denied.

### ·B. Section 211.447.4(2)

■■■ In his second point, Father contends that there was insufficient clear, cogent and convincing evidence to support the court's findings made pursuant to section 211.447.4(2). Specifically, Father contends that the fact that Child was in both the legal and physical custody of the DFS prevented Father from "shouldering the parental responsibilities set forth in section 211.447.4(2d)." Furthermore, Father contends that the service plan never ordered him to pay support and that the actions of Mother rendered Father unable to pay support.

In determining whether to terminate parental rights based on abuse or neglect the court considers four factors. Section 211.447.4(2). The factors include: (a) a mental condition; (b) chemical dependency; (c) severe or recurrent acts of physical, emotional or sexual abuse towards the child or any child in the family; and (d) repeated or continuous failure, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education. An affirmative finding on any one of these four factors is sufficient to support termination of parental rights. *B.C.K.*, 103 S.W.3d at 327.

Child was adjudicated abused and neglected on October 25, 2001. Pursuant to section 211.447.4(2)(d) the court found that Father repeatedly or continuously failed to provide Child with adequate food, clothing, shelter, or control necessary for Child's development. The record discloses that, despite being employed, Father never provided the foster parents or the DFS with any financial support for Child. By Father's own admission in his brief, the service plan required Father, *inter alia,* to pay child support. Moreover, "it is imma-

terial that the State never requested that Father contribute to the support of his [child]." *In the Interest of T.G.,* 965 S.W.2d 326, 335 (Mo.App. W.D.1998). Financial support of a child is a continuing obligation. *In the Interest of Q.M.B.,* 85 S.W.3d 654, 660 (Mo.App. W.D.2002); *T.G.,* 965 S.W.2d at 335. The trial court's finding that Father failed to provide support and thereby neglected Child is supported by clear, cogent and convincing evidence. Point denied.

### C. Section 211.447.4(3)

■■■ In his third point, Father contends that there was insufficient clear, cogent and convincing evidence to support the court's findings made pursuant to section 211.447.4(3). Specifically, Father asserts that there is insufficient evidence that the continuation of the Father–Child relationship would diminish Child's prospects for integration into a stable and permanent home. While Father admits that he had an obligation to carry out his service plan, Father asserts that he made a good-faith effort to comply with the plan's terms. Father contends that the lack of action by the DFS "doomed" his performance of the conditions of the plan.

The juvenile officer may file a petition to terminate the parental rights when the child has been under the jurisdiction of the juvenile court for a period of one year and the conditions which led to assumption of jurisdiction still persist, or continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. Section 211.447.4(3). In determining whether to terminate parental rights on this basis, the court considers: (a) the terms of the social service plan and the progress made in complying with those terms; (b) the aid provided the parent to provide a proper home for the child; (c)

any mental condition which renders the parent unable to provide the child the necessary care, custody or control; and (d) chemical dependency. *Id.* The court considers all factors together with other relevant evidence. *A.S.O.,* 75 S.W.3d at 912. While the trial court is required to make findings regarding each of these four factors, proof of one of these four factors is sufficient for the court to terminate parental rights. *Id.* at 912–13.

Here, there is no dispute that Child has been under the continual jurisdiction of the court for over one year. The court made findings on each of the four factors, as required, and found that factors (a) and (b) applied to Father. The court properly considered that Father failed to comply with his service plan. According to Ms. Moore's review of Child's file, Father never contacted a caseworker to set up the required psychological evaluation and parenting class or even to provide an address. Contrary to Father's contentions, Father did not need the assistance of the DFS in complying with many terms of his service plan. Father did not need anyone's permission or clearance to visit, call or write Child. Despite this, Father failed to visit with his son twice a month, pay financial support, or obtain adequate housing for himself and Child as required by the service plan. Further, the evidence indicates that the DFS provided in-home services through Edgewood Children's Center as well as other assistance toward the requirements of Father's service plan. Accordingly, there is sufficient clear, cogent and convincing evidence to support the finding that continuation of the Father–Child relationship diminishes Child's chances of early integration into a stable and permanent home. Point denied.

### D. Section 211.447.4(1)

In his fourth point, Father contends that there was insufficient clear, co-gent and convincing evidence to support the court's findings made pursuant to section 211.447.4(1). Furthermore, Father asserts that there is insufficient evidence he abandoned Child. In support of his contention, Father first asserts that he visited Child on a regular basis and then alleges that he had "good cause" for not visiting and supporting child in a more meaningful manner.

A child is considered abandoned if, for a period of six months or longer, the parent has left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so. Section 211.447.4(1)(b). As stated above, Father was gainfully employed during the time that Child was under the court's jurisdiction. Despite this, Father did not provide Child's foster parents or the DFS with any financial support for Child. Accordingly, there is sufficient clear, cogent and convincing evidence to support the finding that Father abandoned Child. Point denied.

### E. Section 211.447.6

In his final point on appeal, Father contends that there was insufficient clear, cogent and convincing evidence to support the findings made pursuant to section 211.447.6. Specifically, Father challenges the court's findings with regards to two of the seven factors necessarily considered before terminating parental rights.

As required by section 211.447.6, the court found that: (a) Child had minimal emotional ties to Mother and Father; (b) Mother and Father have failed to maintain regular visits or other contacts; (c) Mother and Father, although financially able, have failed to contribute to the costs and care of maintenance for Child; (d) there is reasonable cause to believe that additional services would not bring about lasting

changes by Mother and Father so as to enable Child to return to them within an ascertainable time; and (e) Mother is disinterested and lacks commitment to Child; Father is interested but lacks commitment to Child.

Father challenges the court's findings that (a) Child has minimal emotional ties to Father and (b) Father has failed to maintain regular contacts. The evidence supports the conclusion that Child has minimal emotional ties to Father. In fact Father's own sister, Patricia Openlander, testified that Child views Father as "a really good uncle [b]ecause he's not around [Child] enough to be the father that he . . . should be." The evidence further supports the court's conclusion that Father failed to maintain regular contacts with Child. Beginning in July 2001, Child was in foster care. Almost two years later, Ms. Openlander testified that Father visited Child only "every . . . two or three months." This evidence clearly indicates Father's lack of commitment to Child. Accordingly, there is sufficient clear, cogent and convincing evidence to support the finding that (a) Child has minimal emotional ties to Father and (b) Father has failed to maintain regular contacts. Point denied.

### Conclusion

We affirm the judgment of the Family Court of St. Louis County terminating the parental rights of both Mother and Father as to Child.

BOOKER T. SHAW, P.J., and LAWRENCE G. CRAHAN, J., concur.