**In the Interest of K.W., C.L. and M.W.**

**No. ED 84769.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 10, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2005.

---

Timothy Melenbrink, Union, MO, for appellant.

Julie Forman–Jones, Union, MO, for respondent.

John R. O'Connor, Union, MO, Guardian Ad Litem.

## OPINION

GLENN A. NORTON, Judge.

Mother appeals the judgment terminating her parental rights with respect to K.W., C.L. and M.W. We reverse and remand.

## I. BACKGROUND

The Missouri Department of Social Services, Children's Division, took custody of Mother's three children—a five-year-old boy, a three-year-old girl and a two-year-old boy—in the summer of 2001. In August of that year, the trial court entered judgment assuming jurisdiction over the children based on inadequate supervision, unsanitary living conditions and the failed efforts of the Division, through various services, to prevent removal ("the jurisdiction judgment"). Mother made progress towards reunification under the social services plan, and, by late spring of 2002, the Division allowed the children to return to Mother for an in-home trial placement. But the children were removed again in

July of 2002 on reports of abuse and neglect. The court held evidentiary hearings in the fall of 2002 and spring of 2003—hearings at which Mother and her counsel appeared—and then entered judgment in July of 2003 ("the permanency judgment"). In the permanency judgment, the court concluded that reunification was no longer an appropriate plan, that the parties should proceed towards termination of Mother's parental rights and that the Division was no longer required to make reasonable efforts towards reunification.[1]

Almost eight months later, in March of 2004, the court held an evidentiary hearing on the juvenile officer's petition to terminate. At that hearing, a case worker who had been with the Division for only six months, Mother and the foster parent of one of the children testified. In April, the court entered judgment terminating Mother's parental rights, citing as its grounds for termination sections 211.447.4(2) and 211.447.4(3) RSMo 2000 ("the termination judgment").[2] Much of the evidence the court cited in support of termination was based on its findings in the permanency judgment regarding the failed in-home trial placement, Mother's personality disorder and her lack of progress under the social services plan. The court determined that many of these findings remained true at the time of termination and that additional time or services were unlikely to improve Mother's ability to care for the children. On appeal, Mother challenges the sufficiency of the evidence supporting termination.

## II. DISCUSSION

Our standard of review in this case is based on the requirements of section 211.447.5: the trial court must find by clear, cogent and convincing evidence that one or more statutory grounds for termination exists and that termination is in the best interests of the children. *See In re P.L.O.*, 131 S.W.3d 782, 788–89 (Mo. banc 2004). The trial court's determination that a statutory ground has been proven by clear, cogent and convincing evidence will be affirmed unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 789. Evidence is clear, cogent and convincing if it "instantly tips the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004). "In all of these determinations, the reviewing court is deferential to the fact-findings of the trial court and considers all the evidence and reasonable inferences from the evidence in the light most favorable to the judgment." *P.L.O.*, 131 S.W.3d at 789.

Termination in this case was based on the grounds stated in subdivisions (2) and (3) of section 211.447.4. Subdivision (2) provides that the court may terminate parental rights if the child has been abused or neglected. Subdivision (3) is commonly referred to as the failure to rectify provision. It provides that termination is appropriate if:

1. The Division did not provide Mother any services after the permanency judgment was entered, and it appears that at that time face-to-face visitation between Mother and the children also ended. It was stipulated that, until that time, Mother had visited the children regularly.

2. The parental rights of the children's fathers were terminated as well, but they have not appealed. All statutory references are to RSMo 2000.

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

Section 211.447.4(3). Because there are constitutional implications when a court severs the sacred parent-child relationship, we must examine the trial court's findings of fact and conclusions of law closely and strictly construe the statute in favor of preserving that relationship. *K.A.W.*, 133 S.W.3d at 12.

 Mother argues that because the court relied on the findings in its earlier judgments, termination was based only on her past conduct, not on her conduct at the time of termination. In *K.A.W.*, the Supreme Court elaborated on a trial court's obligation to consider the totality of the circumstances before and after the termination petition is filed and "looking to the future." *Id.* at 9–10. "An essential part of any determination whether to terminate parental rights is whether, considered at the time of the termination and looking to the future, the child would be harmed by a continued relationship with the parent." *Id.* at 9. Therefore, the analysis must be prospective. *Id.* Under section 211.447, the parent's behavior in the past and while the children are under the court's jurisdiction is "good evidence of future behavior." *Id.* But past behavior can only support

grounds for termination if it is "convincingly linked to the predicted future behavior," and "[t]here must be some explicit consideration of whether the past acts provide an indication of the likelihood of future harm." *Id.* at 9–10. The court may rely on its prior determinations as evidence of the circumstances of the past, but if it does, then those earlier findings must be updated to address the circumstances at the time of termination and their implications for the future:

> Findings supporting earlier determinations are not irrelevant, but they must be updated to address the extent to which they describe the time of the termination and the potential for future harm. To that end, a trial court cannot support termination by merely incorporating earlier findings supporting its assumption of jurisdiction or some other earlier disposition.

*Id.; see also In re J.M.N.*, 134 S.W.3d 58, 72 (Mo.App. W.D.2004).

Under *K.A.W.*, it was not error for the court in this case to rely in the termination judgment on its earlier determinations. The findings supporting those determinations were relevant and even may have provided good evidence of Mothers predicted behavior in the future.[3] Although the court stated that those earlier findings remained true at the time of termination, these "updated" findings are, in most instances, not supported by substantial evidence of the circumstances at the time of termination. *See K.A.W.*, 133 S.W.3d at 11. Moreover, the termination judgment lacks the type of prospective analysis required by *K.A.W.* Namely, there is not a "convincing link" between Mothers past behavior and her predicted future behavior and no "explicit consideration" of whether

---

**3.** Mother has not challenged the sufficiency of the evidence to support any of the courts earlier findings, nor provided this Court any means by which to review the evidence supporting those findings.

Mothers past behavior provided an indication of the likelihood of future harm to the children. *See id.* at 9–10.[4]

## A. Abuse and Neglect

 Under section 211.447.4(2), the court found that the children had been abused or neglected. Termination for abuse and neglect must be based on conduct at the time of termination. *Id.* at 10. The court first cited its findings in the jurisdiction judgment and then went on to find that there had been, since that time, five additional reports of concern, two of which occurred during the in-home trial placement. While it mentioned five reports, the court cited only four: (1) Mother's report that she had allowed her daughter, who was sexually abused as determined in the permanency judgment, to be taken out on her birthday with a grandparent that Mother knew to be a registered sex offender; (2) the daughter's allegation that Mother had burned her hand on the stove as punishment during in-home trial placement, which the court determined to be true in the permanency judgment; (3) the daughter's report that she had been locked in a dog cage during in-home trial placement, also addressed in the permanency judgment; and (4) the younger son's report that Mother had bitten the daughter on her stomach during in-home trial placement, which the record reveals was also addressed in the permanency judgment. The court then made findings under section 211.447.4(2)(a)—(d).

Under section 211.447.4(2)(a)—and its counterpart in section 211.447.4(3)(c)—a parent's mental condition can support termination, but only if it rises to the level described in the statute:

Sections 211.447.4(2)(a) and 211.447.4(3)(c) provide that a mental or emotional condition must be analyzed in three prongs to make an adequate finding: (1) documentation—whether the condition is supported by competent evidence; (2) duration—whether the condition is permanent or such that there is no reasonable likelihood that it can be reversed; and (3) severity of effect—whether the condition is so severe as to render the parent unable to knowingly provide the child necessary care, custody and control.

*Id.* at 13. Because the standards are the same, we address the court's findings under both subdivisions 211.447.4(2)(a) and (3)(c) together.

First, in its consideration of abuse or neglect under section 211.447.4(2), the court found that Mother had completed a psychological evaluation in September of 2002 and, as found in the permanency judgment, had been diagnosed with a permanent or long-term personality disorder. The court described that Mother had unrealistic or inaccurate expectations regarding age-appropriate expectations and responsibilities for her children, did not understand how to appropriately discipline her children and had thoughts and behaviors that deviated from society's expectations—all of which were addressed in the permanency judgment. Mother's "sense of entitlement and disregard for the safety of others alarmed the Court then and continues to render [her] unable to knowingly provide her children the necessary care, custody and control." The court further found that Mother had not made any progress with treatment of her psychological condition.

4. We recognize that at the time the trial court held the termination hearing in this case, *K.A.W.* had not been handed down and that at the time the termination judgment was entered, *K.A.W.* was a slip opinion only.

In its consideration of termination under section 211.447.4(3), the court reiterated that in the permanency judgment it had determined that Mother had a personality disorder, which indicated that her thoughts and behaviors deviated from society's expectations, that the long-term therapy Mother needed would surely make it nearly impossible for her to ready herself for reunification in the near future and that the condition was not reasonably likely to be reversed and prevented her from consistently providing the necessary care to the children. The court concluded that this remained true. It went on to find that, considering Mother's unwillingness to accept her diagnosis, it was unlikely that additional services would change her understanding of why this condition prevents her from appropriately caring for the children.

Under both sections 211.447.4(2)(a) and (3)(c), the court relied on its earlier determinations regarding Mother's mental condition, which showed that the condition was permanent and that it rendered Mother unable to provide the children the necessary care, custody and control. The updated findings—that Mother's behavior as described in the permanency judgment continued or remained true at the time of termination and rendered her an unfit parent—are not supported by substantial evidence of the circumstances at the time of termination. The only evidence regarding Mother's expectations and discipline of the children came from the case worker, who answered "no" when asked whether she was aware of anything since the permanency judgment that would lead her to believe that Mother had become more realistic in her expectations or better knew how to appropriately discipline the children. But the case worker had only met with Mother twice—once at a previous court hearing and again at the termination hearing—and had only visited Mother and the children together twice during intensive in-home services months before the court took jurisdiction. The case worker was not a psychologist and had conducted no psychological testing of Mother. Her conclusions about Mother, she explained, were based solely on the fact that there was nothing in the case file to indicate that Mother had addressed the issues in the social services plan. Mother testified about her progress under the social services plan. She testified that she had just started working part-time, about four months before, through a temporary service. Before that, she had been caring for her mother who died five months before. She had not yet saved enough money to maintain a home of her own, as required under the social services plan. At the time of the hearing, she was living with her two brothers, paying them rent, and she stated that the children could live there too if she were allowed to have them back. She had applied for a full-time position at work, but likely needed a GED to get that position. She testified that she still had not completed her GED classes, as required by the social services plan, because she did not have a way to get to the classes. Her driver's license was suspended in 1997 for failure to maintain insurance and she had not been able to save enough money to have it reinstated. Mother stated that she relied on her brother for transportation, and that, while he would be able to take time from his job to drive her children somewhere if need be, he could not do so to take her to her GED classes. Mother told the court that she loved her children and does her best for them as a single parent. She testified that, unlike the last time the children were taken from her, at the time of the termination hearing she had a job that provided enough money to support the children. She realized the mistakes she made in not properly super-

vising the children and would have her eyes open more. Her goal was to have her own place as soon as possible. This testimony is not substantial evidence supporting the conclusions that, at the time of termination, Mother continued to have unrealistic expectations of her children, did not understand how to appropriately discipline them, demonstrated "deviate" thoughts and behavior, exhibited a "sense of entitlement" and disregarded others' safety or was unable to knowingly provide her children the necessary care, custody and control at the time of termination.

The only finding on this issue that is supported by evidence of the circumstances at the time of termination was that Mother had not progressed with treatment of her mental condition. The case worker testified that Mother had not asked for any such treatment and that, to the case worker's knowledge based on the fact that the Division had not paid for any such treatment, Mother had not completed any therapy to overcome the personality disorder. Mother admitted that she was not attending counseling at the time of the hearing and claimed that, although she knew she had been diagnosed with a personality disorder, no one had ever told her that she needed treatment. Mother had seen a counselor a few times in the past, but did not know whether that counselor had been aware of her diagnosis. When the court has, before termination, determined that a parent has a permanent mental condition so severe that it renders the parent unfit and that the condition requires long-term therapy, it could be argued that the parent's failure to undergo such therapy by the time of the termination hearing raises the inference that her condition remains as severe and debilitating to her ability to parent as it did in the past—even without any other evidence of the parent's behavior and its impact on the children at the time of termination.

We need not decide whether that is true in this case, however, because regardless of the sufficiency of the evidence to support the conclusions about Mother's condition at the time of the termination, the implications of Mother's mental condition on the likelihood of future harm to the children were not adequately addressed. The only forward-looking findings regarding Mother's mental condition do not explicitly address the potential for future harm to the children: the court found that the long-term therapy Mother needed would make it nearly impossible for her to ready herself for reunification in the near future and that Mother's unwillingness to accept her diagnosis—which is not supported by the evidence at the termination hearing-made it unlikely that additional services would change her understanding of her condition.

As to the remaining factors under section 211.447.4(2), the court found that Mother did not suffer from a chemical dependency under section 211.447.4(2)(b). Under section 211.447.4(2)(c)—regarding severe or recurrent acts of physical, emotional, or sexual abuse by the parent or someone else with the parent's knowledge—the court reiterated its findings from the jurisdiction judgment and the additional reports of concern, as described above. Similarly, under section 211.447.4(2)(d), the court stated that Mother failed to adjust her circumstances to allow the children to return to her custody, care and control and referred to its "above-cited findings" to support the conclusion that Mother repeatedly failed, although physically or financially able, to provide for the children's needs. Additional time, the court went on, was unlikely to improve Mother's ability to care for these children.

█ Assuming that any of the cited additional reports of concern were suffi-

ciently severe abuse or neglect,[5] the only one that might have occurred since the in-home trial placement and that was not based on findings in the permanency judgment was Mother's report that she allowed daughter to go out with a known sex offender. This finding was based on the case worker's testimony at the termination hearing that the case file showed Mother had reported this incident to the Division sometime before the case worker began working for the Division (some six months before the termination hearing). There is no other indication as to when the incident occurred—although it must have occurred, if at all, at a time when Mother had custody of the children, which had not been since July of 2002 *before* the termination petition was filed. Therefore, termination on this ground was not based on substantial evidence of Mother's conduct at the time of termination.

Moreover, regardless of when the incidents of abuse and neglect occurred, there is no convincing link between that behavior and Mother's predicted future behavior and no explicit consideration of whether her past acts of abuse and neglect towards the daughter indicated a likelihood of future harm to all of the children. The only forward-looking statement in the findings under section 211.447.4(2)(c) and (d)—that additional time likely would not improve Mother's ability to parent—is not convincing because it does not explicitly state *why*, based on her past behavior, giving Mother additional time would be futile.

In sum, there is not substantial evidence to support the conclusion that termination under section 211.447.4(2) for abuse and neglect was proven by clear, cogent and convincing evidence of the circumstances at the time of termination, and the prospective analysis does not meet the requirements of *K.A.W.* Point I is granted.

## B. Failure to Rectify

Termination for failure to rectify under section 211.447.4(3) must be based on a determination that potentially harmful conditions continue to exist at the time of termination, not just that the conditions that led to jurisdiction persist. *Id.* at 10. Here, in addition to finding that the conditions leading to the assumption of jurisdiction persisted and that the court's conclusion in the permanency judgment that Mother had made no significant improvement in her ability to care for the children remained true at the time of termination, the court also found that conditions of a potentially harmful nature continued to exist. Namely, Mother remained unable to appropriately discipline her children, continued to have unrealistic expectations of the children and failed to complete the long-term therapy necessary to overcome many of the obstacles created by her personality disorder. The court went on to find little likelihood that these harmful conditions would be remedied at an early date so that the children could be reunified with Mother in the near future, citing its findings in the permanency judgment that, despite the Division's exhaustive services and efforts, the children were unable to live with Mother during the in-home trial placement without sustaining injury. The court found that this remained true at the time of termination and that no additional services could be offered.

---

**5.** "Another essential part of any determination whether to terminate parental rights is whether the cited acts or conditions of the parent, and their accompanying impact upon the child, are severe enough to constitute abuse or neglect. Some parental conduct will harm a child without constituting abuse or neglect. It is essential that the trial court determine whether the parent's acts are of sufficient severity." *K.A.W.*, 133 S.W.3d at 11.

Finally, the court found that continuation of the parent-child relationship greatly diminished the children's prospects for early integration into a permanent and stable home. Again referring to its findings in the permanency judgment, the court stated that the children needed a parent who could offer a stable and secure environment in which to thrive and that the biological parents had not demonstrated an ability to perform their parental functions. "To continue to subject the children to temporary living conditions places them at risk of developing bonding and attachment problems. The children's only chance at a stable and permanent home is to quickly secure same."

The court then made findings under section 211.447.4(3)(a)—(d). Under section 211.447.4(3)(a), the court considered whether Mother had progressed under the social services plan. It cited its findings in the permanency judgment, which established that Mother had not complied with the terms of the social services plan: her employment was rare, short and sporadic; she had no home of her own; the in-home trial placement failed and caused further harm to the children; and there was little, if any, improvement in Mother's ability to care for the children. The court went on to find that Mother failed to make progress and that giving her additional time was unlikely to improve her ability to care for the children. The court also found, under section 211.447.4(3)(b), that the permanency judgment established that, after removing the children, the Division made reasonable efforts towards reunification and that no additional services were likely to assist Mother or improve her ability to care for the children. The court's findings regarding Mother's mental condition under section 211.447.4(3)(c) were discussed above, and the court found that Mother did not suffer from a chemical dependency under section 211.447.4(3)(d).

First, with respect to the potentially harmful conditions the court found to exist at the time of termination, there is no substantial evidence, as discussed above, that at the time of termination Mother remained unable to appropriately discipline the children or that she continued to have unrealistic expectations of them. As to the reference again to Mother's failure to complete the therapy needed to overcome some obstacles created by her personality disorder, there is no explanation as to what obstacles the court was considering or how the failure to address them was a potentially harmful condition to the children at the time of termination or in the future. As a result, the predictions about Mother's ability to remedy these conditions and the futility of offering additional services are not convincing. Similarly, there was no substantial evidence to support the findings regarding the children's chance for a stable and permanent home. Although the case worker testified that a continued relationship with Mother decreased the children's prospects for a stable home, the case worker had spent almost no time with Mother and the children together.

█ The finding that Mother failed to progress under the social services plan is, in part, supported by evidence of Mother's behavior at the time of termination. Mother's own testimony at the hearing showed that, at the time of termination, she had a job—which was, it seems, some progress under the social services plan— had a place to live and was working to save for a place of her own. She still had not completed her GED, still had no transportation and still had not completed counseling. "A lack of effort to comply with a plan, or a lack of success despite effort, can predict future problems." *Id.* at 10. But it is not clear how Mother's employ-

**216**

ment, education, or living and transportation arrangements were a potential harm to the children at the time of termination or in the future.[6] *See In the Interest of C.F.C.*, 156 S.W.3d 422, 431 (Mo.App. E.D. 2005) (reversing and remanding, in part, based on trial court's failure to discuss how progress, or lack thereof, with social services plan impacted future ability to parent). The findings that additional time and services would not likely improve Mother's ability to care for the children do not provide a convincing link between the past and the future because, again, the reasons behind these predictions have not been articulated. Nor, because of her limited contact with Mother, does the case worker's testimony—that no additional services could be provided that would help Mother and that no plan could be formulated to allow for reunification—provide a substantial basis for the findings regarding the futility of more time and services.

In sum, there is not substantial evidence to support the conclusion that termination under section 211.447.4(3) for failure to rectify was proven by clear, cogent and convincing evidence of potentially harmful conditions existing at the time of termination, and the prospective analysis does not meet the requirements of *K.A.W.*

We recognize, as did the Supreme Court, that making predictions about the future is difficult. See *K.A.W.*, 133 S.W.3d at 9. Where the circumstances at the time

of termination are more firmly established by evidence at the termination hearing, a trial court is more likely to be able to make "convincing links" between the parent's past behavior and predicted future behavior because the court can cite the parent's progression of behavior up to that point as support for its predictions about behavior in the future. But where, as here, the trial court is presented with limited evidence of the circumstances after the termination petition was filed and has to rely on testimony from case workers who have had virtually no contact with the parent, the difficult tasks of evaluating the situation as it exists at the time of termination and then convincingly predicting the future are made even more difficult.

Point II is granted.[7]

## III. CONCLUSION

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.[8]

CLIFFORD H. AHRENS and NANNETTE A. BAKER, JJ. concurring.

---

**6.** This Court recently reversed and remanded a termination decision under section 211.447.4(3), in part, based on the trial court's failure to discuss how the parent's progress, or lack of progress, with the social services plan impacted her future ability to parent. *See In the Interest of C.F.C.*, 156 S.W.3d 422, 430–31 (Mo.App.E.D. 2005).

**7.** Because we find insufficient evidence to support any of the court's stated grounds for termination, we need not reach Mother's point IV regarding whether termination was

in the children's best interests. Likewise, we do not address Mother's point III regarding admission of the Division's social summary and the court's refusal to disqualify itself after receiving that document.

**8.** Our disposition has no bearing on the Division's custody of the children or the trial court's jurisdiction over them, nor does it foreclose the possibility of future proceedings to terminate Mother's parental rights.