156 S.W.3d 422 (2005)
In the Interest of C.F.C., A Minor.
No. ED 84019.
Missouri Court of Appeals, Eastern District, Division Three.
February 8, 2005.
*424 Christopher M. Braeske, St. Louis, MO, for Appellant.
Carol K. Bader, St. Louis, MO, for Respondent.
Adrienne L. Schaffer-James, Clayton, MO, for Juvenile.
GEORGE W. DRAPER III, Chief Judge.
A.D.S. (hereinafter, "Mother") appeals from the judgment terminating her parental rights to her five-year-old son, C.F.C. (hereinafter, "Child").[1] She challenges the *425 trial court's finding that three grounds for termination exist pursuant to Sections 211.447.2(1), 211.447.4(2), and 211.447.4(3), RSMo 2000.[2] We reverse and remand.
Between June and December of 2001, the Division of Family Services (hereinafter, "DFS") received three separate reports that Child's 1-year old sister, E.R.M. (hereinafter, "Sister"), had unexplained injuries. DFS questioned Mother after the first two reports. She responded that Child hit, scratched, and bit Sister, as well as other children. Mother also confirmed an additional report that Child overdosed on his prescription medication. DFS suspected Mother neglected her children. Upon receiving the third report about Sister's injuries, DFS contacted the police, who took Child and Sister into protective custody on December 10, 2001. The next day, DFS placed Child in Our Little Haven, a residential facility for children with special needs, where he currently resides.[3]
At the request of DFS, Mother underwent a psychological evaluation on February 12, 2002. In his evaluation report, Dr. Robert Schlitt opined that Mother had significant learning disabilities and functioned overall in the mild mental retardation range. He questioned whether she could function without having another responsible adult in the household and whether she had even minimal parenting skills and judgment. He recommended that she receive treatment from a clinical therapist, a family therapist, and a psychiatrist. DFS also referred a social worker, Michael Mehan, to her and he counseled her weekly in her home for at least the next two years.
After a hearing on April 22, 2002, the trial court found Child lacked proper care. The court took jurisdiction over him and assigned DFS legal custody. The court also ordered Mother to begin family counseling and to continue seeing a psychiatrist and participate in Parents as Teachers. That same day, Mother and DFS signed, and the court later approved, a written social service plan for family reunification. The plan ordered DFS to help Mother comply with the following requirements: (1) visit Child twice a month; (2) make financial contributions to his support; (3) obtain a psychological evaluation; (4) obtain and maintain housing; and (5) participate in psychological counseling and parenting classes.
Over the next year, Mother performed most of the tasks to some extent, and therefore, she did fail to completely comply. Specifically, she failed to pay for Child's support, although she did provide gifts and food for Child during her visits, even though some of the gifts were inappropriate, according to DFS. She consistently visited Child twice a month as allowed by the court. A DFS worker testified that during the visits Mother usually engaged in appropriate activities with Child, such as singing songs, reading books, and playing with Legos. Mother obtained a psychological evaluation and participated consistently in her psychological counseling. She participated in Parents as Teachers more sporadically. She completed parenting classes in July 2003 after the termination petition was filed.
Later, the court also ordered her to use the parent aide services of the St. Louis Regional Center and to continue taking GED classes. Again, Mother performed most of the assigned tasks to some extent. *426 However, she did not utilize the Regional Center's housing services because she refused to share an apartment with another mother, as the Center would require. She also turned down the employment services offered by the Center because she already had a job and felt capable of finding another one on her own in the future, if necessary.
On three occasions after the trial court assumed jurisdiction over Child, the court reviewed the progress Mother and DFS made regarding the social service plan and the court updated the permanency plan for the placement of Child. After the third permanency hearing on May 23, 2003, the court cancelled the social service plan and referred the matter to the Juvenile Officer for termination. The court explained that further efforts by DFS to reunite Mother and Child would be fruitless and inconsistent with establishing a permanent placement for Child. The Juvenile Officer then filed a petition to terminate Mother's parental rights. The trial court held a bench trial. At the time of the termination hearing, Mother lived at her grandmother's house with her young son (half-brother to Child). Child still lived in a residential care facility, did not have a foster family, and there was no permanent placement available for him.
On December 4, 2003, the court entered a judgment terminating Mother's parental rights to Child. The court found that termination was in Child's best interest and that three separate grounds for termination existed pursuant to Sections 211.447.2(1), 211.447.4(2), and 211.447.4(3). Mother appeals the trial court's judgment, arguing that there was insufficient evidence to support any of these grounds for termination.
Section 211.447 governs the termination of parental rights. It authorizes termination if the trial court finds that one of the grounds for termination exist and that the termination of parental rights is in the best interest of the child. Section 211.447.5. The State bears the burden of proving substantial evidence to support the grounds. Grounds for termination must be supported by clear, cogent and convincing evidence. In the Interest of A.S.W., 137 S.W.3d 448, 453 (Mo. banc 2004). Evidence is clear, cogent, and convincing if it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." Id.
In termination of parental rights cases, this Court will review any conflicting evidence in the light most favorable to the judgment and will defer to the trial court's assessment of witness credibility. Id. at 452-453. An appellate court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law. Id. at 452.
A parent's right to raise her children is a fundamental liberty interest protected by the constitutional guarantee of due process. In the Interest of K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004). The interest does not evaporate simply because she has not been a model parent or has lost temporary custody of her children to the State. Id. Thus, this Court will examine the trial court's findings of fact and conclusions of law closely and will strictly construe Section 211.447 in favor of the parent and preservation of the natural parent-child relationship. Id.; A.S.W., 137 S.W.3d at 453.
In each of her three points relied on, Mother challenges the three statutory grounds for termination upon which the trial court relied. We address each *427 ground, but not necessarily in the order in which she presented them.
In her third point, Mother argues that the trial court erred in terminating her parental rights based upon its finding, pursuant to Section 211.447.2(1), that Child has been in foster care for at least fifteen of the most recent months twenty-two months. The State concedes, and we agree, that section 211.447.2(1) does not constitute a separate ground for termination, but instead, it merely triggers the filing of a termination petition. In the Interest of M.D.R., 124 S.W.3d 469, 475-76 (Mo. banc 2004). Therefore, to the extent that the trial court considered this finding to be a separate ground for termination, the trial court erred. However, we must still consider the other grounds provided for termination, because the trial court's error will not warrant a reversal if one of the other grounds upon which the court relied was supported by sufficient evidence. In the Interest of C.L.W., 115 S.W.3d 354, 356 (Mo.App. S.D.2003).
In her first point, Mother argues the trial court erred in terminating her parental rights pursuant to Section 211.447.4(2). She asserts there was insufficient clear, cogent, and convincing evidence to support the court's findings that the conditions and parental acts described in that section exist and warrant termination. Particularly, she asserts the actions the trial court cites were either appropriate or did no harm to her children.
Section 211.447.4(2) states that abuse or neglect of a child is a ground for termination of parental rights. In determining whether termination is warranted for abuse and neglect, the trial court is required to consider and make findings on the following conditions or acts of the parent:
(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.
Section 211.447.4(2). Proof of any one of these factors is sufficient to terminate parental rights. In the Interest of A.S.O., 52 S.W.3d 59, 67 (Mo.App. W.D.2001). However, the trial court's findings must be specific enough for a reviewing court to be assured that the trial court properly considered the factor in deciding to terminate parental rights. In the Interest of J.V.O., 133 S.W.3d 570, 574 (Mo.App. S.D.2004). A conclusory finding may be grounds for reversal. Id.
*428 The Missouri Supreme Court recently elaborated upon the findings required for termination of parental rights under Section 211.447.4 in K.A.W., 133 S.W.3d at 1. In that case, the Court noted that Section 211.447 "provides for detailed consideration of the parent's past conduct as well as ... evidence of future behavior." Id. at 9. The Court concluded that a trial court cannot support termination by solely relying on a parent's past conduct. Id. at 10. "[I]t is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights.... Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior. There must be some explicit consideration of whether the past acts provide an indication of the likelihood of future harm." Id. at 9-10. "Findings supporting earlier determinations are not irrelevant, but they must be updated to address the extent to which they describe the time of the termination and the potential for future harm." Id. at 10.
Here, the trial court found that Child had been adjudicated neglected on April 22, 2002, and made findings on each of the four factors enumerated above.[4] The court found no evidence to support termination under the first three factors, although the court did state that Mother was mildly mentally retarded and suffered from depression.[5] Instead, the trial court relied upon the fourth factor as the basis for its conclusion that Mother's neglect of Child provided a ground for terminating her parental rights. The court found that, pursuant to Section 211.447.4(2)(d), that Mother had "repeatedly or continuously failed, although physically or financially able, to provide [Child] with adequate food, clothing, shelter, or other care and control necessary for his physical, mental or emotional health and development." In support of this conclusion, the trial court made only five findings. The court noted that Mother failed to provide any financial support for Child, she often provided Child inappropriate gifts and food, she repeatedly moved in and out of her grandmother's home, she had a volatile relationship with her mother, and she was subjected to domestic violence from her boyfriend.
The trial court's findings are wholly inadequate to support the termination of Mother's parental rights. First, the court failed to describe the past acts that led to its prior adjudication of neglect. The trial court's findings fail to explicitly consider whether Mother's past acts of neglect provide an indication of the likelihood of future neglect. The court made no finding that Mother was likely to repeat any such acts in the future.
Second, the court failed to find that Mother's failures to provide support or age-appropriate toys had or would interfere with her future ability to provide adequate food, clothing or shelter to any of *429 her children while she had physical custody. Mother brought gifts, clothing or food to each of her twice-monthly visits with Child. DFS considered some of the toys inappropriate, because they were not age-appropriate. DFS also objected to Mother bringing McDonald's food and drink to Child and told her to bring more healthy snacks. Mother complied with their requests and brought Child fruit on other occasions. Very little evidence was offered at the trial about Mother's financial resources. She did have some short-term minimum wage jobs. An investigative report prepared by DFS indicated Mother had earned a grand total of $574.67 from July 2002 until March 2003. This amount is hardly sufficient to show that Mother was financially able to pay child support. The record shows limited information about any other sources of income, such as SSI, which Mother might have. The court's findings in this regard are insufficient to support termination on this ground.
Finally, the court found that Mother had changed residence several times, had a volatile relationship with her mother, and was the victim of domestic violence. However, the court failed to find whether or to what degree this conduct detrimentally impacted her children or whether it indicates future neglect is likely. Indeed, the record shows that none of the domestic violence in question occurred in front of Child. Mother does not currently live with an abusive partner and none of her partners ever injured her children. There was ample evidence that Mother had never abused or intentionally harmed Child and that she loved him. While Mother had moved several times, she initially moved out of her grandmother's house because of DFS's recommendation. She finally returned to her grandmother's house, where she lived at the time of the termination hearing. She receives financial assistance from her grandmother and mother, who also lives there. She also had transportation and childcare at that home. While the evidence does show that she has loud arguments with her mother on occasion, such a finding cannot rise to the level of neglect on its own. Therefore, the trial court's findings are insufficient.
The trial court's findings are insufficient to support termination under Section 211.447.4(2), because they fail to consider whether any past acts of Mother will result in future harm as required by K.A.W., 133 S.W.3d at 10. Moreover, the limited findings that were provided were insufficient alone to support termination under Section 211.447.4(2). However, as noted above, we may affirm the trial court's judgment if the evidence is sufficient to support any one ground for termination. Therefore, we address the trial court's reliance on section 211.447.4(3).
In her second point, Mother argues the trial court erred in terminating her parental rights pursuant to Section 211.447.4(3), commonly called the "failure to rectify" provision. She asserts there was insufficient clear, cogent, and convincing evidence to support the court's findings that the conditions in that section exist and warrant termination.
Section 211.447.4(3) provides that grounds for termination exist if:
The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the *430 child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.
The ultimate issue when applying this subdivision of the statute "is the continued existence of an unremedied, neglectful situation." In the Interest of B.S.B., 76 S.W.3d 318, 333 (Mo.App. W.D.2002). The purpose of paragraphs (a) and (b) is to ensure that all reasonable means to help the parents remedy the adverse conditions are utilized, and that courts will not terminate parental rights where such efforts have not been made. Id. For termination of parental rights to be supported by a failure to rectify, it must be based on a "determination that conditions of a potentially harmful nature continued to exist as of the termination, rather than a mere finding that conditions that led to the assumption of jurisdiction still persisted." K.A.W., 133 S.W.3d at 10.
In making its findings, the trial court ruled that there was no evidence Mother had a mental condition that rendered her unable to provide the necessary care, custody and control of her children.[6] It also ruled that Mother did not suffer from a chemical dependency. Instead, the trial court relied almost exclusively on Section 211.447.4(3)(a) and, to some extent, upon Section 211.447.4(3)(b). Here, the trial court's findings that the conditions in Section 211.447.4(3) existed simply tracked the general language of the statute with little elaboration. The court's conclusory findings regarding Mother's failure to rectify are insufficient because they fail to specify which conditions led to the assumption of jurisdiction and which of these conditions still remained at the time of trial. Therefore, we are unsure which conditions the trial court found led to the assumption of jurisdiction and which of these conditions persisted. If the court relied upon the portion of the statute that "conditions of a potentially harmful nature continue to exist," the court failed to specifically list those conditions or that there is little likelihood those conditions will be remedied at an early date. See, In the Interest of C.N.G., 89 S.W.3d 564, 566-67 (Mo.App. W.D.2002).
As to Section 211.447.4(3)(b), the trial court merely found that Mother had "failed on a continuing basis since April 22, 2002, to adjust her circumstances or conduct to provide a proper home for [Child] *431 despite diligent, reasonable, and continuing efforts by DFS to aid her in doing so." The trial court made conclusory statements that DFS's efforts were unsuccessful, but failed to make specific findings as required by statute. See, A.S.O., 52 S.W.3d at 66. Conclusory findings are insufficient under this subdivision. See, C.N.G., 89 S.W.3d at 567-68. The court's findings again merely tracked the language of the statute and are insufficient.
The court's findings regarding the social services plan under Section 211.447.4(3)(a), although more detailed, do not cure the other deficiencies in the judgment. The court did make specific findings about what the service plan required, how Mother complied, and Mother's failures. If the court had made adequate findings on the other aspects of Section 211.447.4(3), then, as a whole, its findings might have been sufficient under Section 211.447.4(3). Yet, on their own, the findings under subdivision (a) are insufficient. A parent's failure to comply with a written service plan does not, in itself, constitute a ground for terminating parental rights. In the Interest of S.J.H., 124 S.W.3d 63, 67 (Mo.App. W.D.2004). Non-compliance is merely a factor to consider in deciding whether the grounds set out in Section 211.447.4(3) exist. Id. The statute requires the trial court to consider "the extent to which the parties have made progress in complying with [the service agreement's] terms," not whether the compliance was full or substantial. S.J.H., 124 S.W.3d at 68 quoting Section 211.447.4(3)(a).
Here, the trial court did not discuss how Mother's progress, or lack of progress, with the social services plan impacted on her future ability to parent Child. In addition, many of the court's findings under Section 211.447.4(3)(a) were similar to its limited findings under Section 211.447.4(2), which we concluded were insufficient to support termination. As such, these findings alone are insufficient to support termination under Section 211.477.4(3) and additional findings are necessary.[7]
The portion of the judgment terminating Mother's parental rights under section 211.447.2(1) is reversed. The remainder of the judgment terminating her parental rights under sections 211.447.4(2) and 211.447.4(3) is reversed and remanded for further hearing and findings consistent with this opinion.
WILLIAM H. CRANDALL, JR., J. and CLIFFORD H. AHRENS, J., concur.
NOTES
[1] The court also terminated the parental rights of Child's father by consent. He does not appeal.
[2] All further statutory references are to RSMo 2000 unless otherwise indicated.
[3] Sister was returned to Mother's physical custody in February of 2002, but was later removed again.
[4] Section 211.447.4(2) no longer requires the prior neglect to have been "adjudicated." See, Section 211.447.2(2), RSMo 1994.
[5] The Juvenile Officer points out that the trial court did make a finding of a mental condition. However, the trial court's findings on this factor are that "there was no evidence" that Mother suffered from a mental condition which could not be reversed and which renders her unable to knowingly provide the necessary care, custody and control for Child, "except that she has been diagnosed with, and takes medication for depression. Mother is also diagnosed with mildly mentally retarded." This finding is, at best, inconclusive as to whether the trial court actually determined Mother's diagnoses rendered her unable to care for Child. Because there are no other findings at all to indicate exactly what the trial court meant, we conclude the court found the factor to be insignificant. The Juvenile Officer does not argue otherwise.
[6] See footnote 5, supra.
[7] This court also notes that many of the court's findings required under Section 211.447.6 are conclusory statements without reference to specific evidence. See, e.g., In the Interest of K.C.M., 85 S.W.3d 682, 697-98 (Mo.App. W.D.2002). While we are not considering the effect of this omission, because of our remand, the trial court is free to revisit its findings as to Section 211.447.6.