**In the Interest of S.M.H.**

**No. ED 85289.**

Missouri Court of Appeals,
Eastern District,
Division one.

Aug. 2, 2005.

Mary Elizabeth Davidson, St. Louis, MO, for appellant.

Gary Lee Gardner, Jefferson City, MO, for respondent.

BOOKER T. SHAW, Judge.

S.M.F. ("Mother") appeals from the trial court's judgment terminating her parental rights to her daughter, S.M.H. ("Child"). Mother raises two points on appeal. In her first point, Mother claims the trial court erred in denying her application for change of judge pursuant to Rule 126.01. In her second point, Mother argues the trial court erred in terminating her parental rights because the Division of Family Services ("the Division") failed to present clear, cogent, and convincing evidence that grounds for termination existed pursuant to Section 211.447, RSMo 2000.[1] We affirm in part, reverse and remand in part.

A large portion of the factual background and procedural history of this case has been judicially determined by the Missouri Supreme Court in *In the Interest of S.M.H.*, 160 S.W.3d 355 (Mo. banc 2005) ("*S.M.H.* I"), where T.H., Jr. ("Father") appealed the termination of his parental rights with respect to Child. The relevant portions of this opinion are as follows:

---

1. All statutory references are to RSMo 2000 unless otherwise specified.

[Mother] moved in with [Father], who was 35 years old, when she was 15 years old, and they began a sexual relationship when she was 16 years old. She became pregnant and gave birth to a daughter, [Child,] on October 6, 2001, at age 17. On April 27, 2002, the Division filed a petition under Section 211.031, RSMo. 2000, alleging that [Child] was without the proper care, custody, and support because Mother had a mental illness, was suicidal, and had threatened to kill [Child]. The petition further alleged that Father did not take Mother's threats against [Child] seriously and that she was in need of proper care. The Division took protective custody of [Child], and she was placed in foster care. On June 17, 2002, after trial, the court took jurisdiction of [Child]. She was placed in the Division's temporary legal and physical custody, but the court determined that Father was an appropriate placement for [Child] and she was placed with him. [Michelle] Dean began providing childcare for [Child] because Father's work schedule caused him to pick her up late at night and return her early in the morning[.] [Father] placed her in the care of Mrs. Dean and her husband the next month. Father would regularly visit [Child] at the Deans.

The court held a review hearing on October 22, 2002. It entered an order directing that [Child] remain in the Division's custody for appropriate placement, "which may or may not be the Father, which is to be determined by the Family Support Team." The Division initially placed [Child] in foster care, but by consent of all parties, in December 2002 an order was entered placing [Child] back in Father's custody "so long as he resides with the Deans." Father and [Child] moved into the Dean residence, although Father also spent time at the home of a friend.

Another review hearing was held on February 6, 2003. The Division filed a permanent plan summary, which found progress on compliance with the social service plan and recommended that [Child] return to the legal custody of Father and Mother. On February 13, 2003, after conducting a permanency plan hearing retaining jurisdiction and ordering the Division to continue its reunification efforts, the court entered a permanency review order, which directed the Division to make a recommendation on permanent placement of [Child].

On June 5, 2003, a family support team meeting was held, and the Division prepared a new permanency plan. That plan indicated that Father and Mother had successfully negotiated the steps necessary to retake full custody of [Child]. It stated that Father and Mother had *fully* completed the terms of their social service plans. It recommended that full legal and physical custody of [Child] be returned to Father and legal custody to Mother, that the Division terminate protective custody, and that the court terminate jurisdiction over [Child].

A hearing was scheduled on the plan for June 25, 2003, at which it was anticipated that Father would regain full custody of [Child]. However, in the week after the Division's recommendation, the Deans let Father know that they wanted to keep [Child] with them but wanted him to come to the house only on a schedule worked out with them in advance, rather than just having him "popping" in and out. He told them that if they kept his daughter, then he wanted to be able to come and go to see her, and in fact the then-governing court order specifically provided that he was [Child]'s custodian, not the Deans, making his objection to being told that the Deans wanted to

limit him to scheduled visits with [Child] understandable.

Unwilling to accept being put on a schedule, Father told the Deans that he and his daughter were a "package deal" and, as they would not take the package, he moved his daughter out of their residence and brought her to Mother's house to live. Nonetheless, recognizing that the Deans and his daughter were close, he permitted [Child] to visit with the Deans thereafter.

Father moved [Child] without informing the Division of the Dean's insistence that he only come to the house on a schedule to see [Child] and without seeking permission to move with her to a new location. Father later explained that, because at the June 5, 2003, family support team meeting Mother was classified as an appropriate placement and permitted unsupervised daytime visitation, he thought it would be all right for him to bring [Child] back to live with Mother so she could help him care for their daughter. He also admitted that he knew the standing order officially still provided otherwise, however.

The Division did not learn of Father and [Child]'s move to Mother's residence until Michelle Dean told caseworkers about it after [Child] had been living with Mother for about two weeks. The Division then learned that Mother allowed [Child] to visit the Deans for a weekend in June while Mother went on a float trip, and that, when Mother came to pick up [Child], she decided to leave her in the Dean's care temporarily. Nothing in this record indicates that Mother threatened [Child] or put her in any danger during this period, nor does any evidence indicate that Mother engaged in other conduct showing she was not an appropriate custodian for her daughter. But, because the standing court order did not authorize Mother to have over-

night visits, at the June 25, 2003, hearing the court placed [Child] in the custody of the Deans and permitted Father only limited visits each week, until a further hearing could be held on August 11, 2003, and ordered the Division to file a petition in the probate division seeking guardianship by the Deans within thirty days from that order.

No new report was prepared by the August 11 hearing; the last one prepared was the report of June 5, 2003, recommending termination of court jurisdiction and returning custody to Mother and Father. Nonetheless, although no other events relevant to disposition occurred between June 25 and the August 11, 2003, hearing, the Division withdrew its recommendation of permanent placement with Father and Mother and release of the court's jurisdiction over [Child]. At the August 11 hearing the court directed the Division to file a petition to terminate parental rights, finding that the permanent plan that would best serve [Child]'s interests was termination.

As directed by the court, the Division filed a petition to terminate parental rights pursuant to [S]ection 211.447, on September 8, 2003, under the same case number. The petition alleged as to Mother that she had failed to support [Child], that she had a mental condition—depression—that rendered her unable to provide for her child's care, custody, and control, and that she was unfit to be a party to the parent-child relationship, and that the conditions that led to assumption of jurisdiction still remained. It then listed seven ways in which Mother allegedly had failed to make progress on social service plans, failed to secure housing, provide financial support, and so forth.

*S.M.H. I,* 160 S.W.3d at 362–64. Additional facts specifically relating to Mother's conduct will be discussed below in more detail as we analyze her points on appeal.

The trial court found all statutorily grounds asserted in the petition against Mother were supported by clear, cogent, and convincing evidence. The court terminated Mother's parental rights. This appeal follows.

■ In her first point on appeal, Mother claims the trial court erred in denying her application for change of judge pursuant to Rule 126.01. Particularly, Mother argues the petition to terminate parental rights was a new civil action, and therefore, Rule 126.01 authorized a new application for change of judge. Mother claims the application was timely filed, and as a result, the trial court did not have jurisdiction to try or determine the merits of the petition to terminate. The Division asserts that Mother does not have standing to raise this issue. Specifically, the Division argues Mother never requested a change of judge, did not join in Father's request for change of judge, and never raised the issue at trial. We agree with the Division.

The record reflects Father filed an application for change of judge pursuant to Rule 126.01(c) after the case was set for trial. Mother did not file a separate motion, nor did she join in Father's application. Even if we could construe Father's application for change of judge as including Mother's interests, the Missouri Supreme Court has already ruled on this issue. The Court held a petition to terminate parental rights was a "supplemental petition," and therefore, because Judge Frawley was the same judicial officer who heard previous proceedings in the case, Father's motion for change of judge was untimely. *S.M.H. I,* 160 S.W.3d at 361. Point I is denied.

In her second point on appeal, Mother argues the trial court erred in terminating her parental rights as to Child. Mother argues the judgment was not supported by clear, cogent, and convincing evidence on any of the statutorily asserted grounds for termination. The trial court found termination of Mother's parental rights were supported on the following grounds: (1) Mother had abused and neglected Child pursuant to Section 211.447.4(2); (2) the conditions which caused the trial court to assume jurisdiction over Child continue to exist, and/or cannot be remedied at an early date to permit reunification pursuant to Section 211.447.4(3); (3) Mother is unfit to be a party to the parent-child relationship because of her consistent pattern of abuse, because of specific conditions which are of a duration and nature rendering Mother "unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental and emotional needs of [Child]" pursuant to Section 211.447.4(6); and the termination of parental rights was in the best interest of Child pursuant to Section 211.447.6.

■ We will affirm the judgment of the trial court terminating parental rights unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declared or applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *In the Interest of P.D.,* 144 S.W.3d 907, 910 (Mo.App. E.D.2004). We view the facts and reasonable inferences in the light most favorable to the trial court's decision and defer to the trial court's superior ability to determine the credibility of witnesses. *In the Interest of E.T.C.,* 141 S.W.3d 39, 45 (Mo.App. E.D.2004).

■ A trial court can terminate parental rights only if the grounds for termination are supported by clear, cogent, and convincing evidence. *In the Interest of*

*M.D.R.*, 124 S.W.3d 469, 476 (Mo. banc 2004). "Clear, cogent, and convincing evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In the Interest of A.S.W.*, 137 S.W.3d 448, 453 (Mo. banc 2004). "The court's primary concern in cases involving the termination of parental rights is the best interest of the child." *E.T.C.*, 141 S.W.3d at 45. Satisfaction of one statutory ground for termination is sufficient to terminate parental rights if termination is in the child's best interest. *In the Interest of E.L.B.*, 103 S.W.3d 774, 776 (Mo. banc 2003).

 "A parent's right to raise [his or] her children is a fundamental liberty interest protected by the constitutional guarantees of due process." *In the Interest of K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004). Therefore, statutes that provide for the termination of parental rights are strictly construed in favor of the parent and preservation of the natural parent-child relationship. *Id.* "The termination of parental rights is the exercise of an awesome power, and should not be done lightly." *P.D.*, 144 S.W.3d at 910.

The first ground the trial court relies upon to terminate Mother's parental rights is that Mother abused and neglected Child. Section 211.447.4(2) states a petition to terminate parental rights may be filed when it appears the child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development;

Section 211.447.4(2).

 When terminating parental rights on the ground that a child has been abused or neglected, the trial court must enter findings with respect to each condition listed in the statute, even if only to state the condition is irrelevant and the reasons why. *In re A.M.C.*, 983 S.W.2d 635, 638 (Mo.App. S.D.1999).

 In this case, the trial court found Child had been abused or neglected pursuant to Section 211.447.4. Specifically, the trial court stated Mother had "repeatedly and continuously failed, though physically or financially able, to contribute to the costs of care and maintenance for [Child] and to provide [Child] with the care and control necessary for her physical, mental and emotional health and development."

The trial court did not make any explicit findings with respect to this ground for termination, but merely tracked the language verbatim from the statute.

 The financial support of a minor child is a continuing parental obligation. *In the Interest of Q.M.B.*, 85 S.W.3d 654, 660 (Mo.App. W.D.2002). Even if a parent is unable to pay for all of his or her child's financial needs, the parent has a duty to contribute as much as he or she reasonably can. *In Interest of K.L.*, 972 S.W.2d 456, 461 (Mo.App. W.D.1998). "Evidence that a parent has provided some contribution, even if not fully sufficient for support, demonstrates the parent's intent to continue the parent-child relationship and militates against termination." *S.M.H. I*, 160 S.W.3d at 367.

The trial court made no explicit findings, and there was no evidence introduced at trial, with respect to Mother's financial contribution to Child. Nowhere in the record does it indicate whether Mother contributed to the costs of Child's care and maintenance, nor was there any evidence presented with regard to her financial ability to do so. This is in contrast to the trial court's specific factual findings with respect to Father's alleged lack of financial support where the court found Father did not pay the full amount of the foster mother's daycare expenses for Child. Thus, we find the record does not support this basis for termination under the statute.

 The second ground the trial court relied upon for terminating Mother's parental rights, commonly referred to as a "failure to rectify," *In the Interest of Q.D.D.*, 144 S.W.3d 856, 860 (Mo.App. S.D. 2004), was that the conditions which led to the assumption of jurisdiction still persist and/or conditions of a potentially harmful nature continue to exist that resulted in Child being in foster care on a consistent basis since April 25, 2002. Section 211.447.4(3). Under these circumstances, when a petition to terminate parental rights is filed, the court shall consider and make findings on the following factors:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

*Id.* Courts have required that a finding of failure to rectify sufficient to support termination under Section 211.447.4(3) be based upon a determination that conditions of a potentially harmful nature continued to exist as of the termination, rather than a mere finding that conditions that led to the assumption of jurisdiction still persisted. *In the Interest of T.A.S.*, 62 S.W.3d 650, 656–57 (Mo.App. W.D.2001).

We begin our analysis by examining whether the conditions that existed at the time Child was taken into protective custody continue to exist. The trial court's judgment fails to discuss any of the conditions that existed at the time the Child was

taken into protective custody, but merely tracks the language of Section 211.447.4(3). The court's conclusory findings regarding Mother's failure to rectify are insufficient because they fail to specify which conditions led to the assumption of jurisdiction and which of these conditions still remained at the time of trial. *In the Interest of C.F.C.*, 156 S.W.3d 422, 430 (Mo.App. E.D.2005).

After its conclusory finding that the conditions which led to the assumption of jurisdiction still persist, the trial court proceeded to discuss the factors listed under Section 211.447.4(3). The trial court made specific findings only with respect to subsections (a) and (b). First, the trial court found Mother made insufficient progress under the terms of the social service plan. Second, the trial court found the Division was unsuccessful in its efforts to assist Mother in adjusting her circumstances and conditions to be able to provide a proper home for Child on a continuing basis. The trial court stated at the end of its judgment that it had "considered all subsections of Section 211.447.4 RSMo and Section 211.447.6 RSMo. and except as expressly provided herein, finds the subsections irrelevant because no evidence of their applicability was presented." Therefore, we assume by that statement the trial court disregarded as irrelevant Mother's alleged mental condition, which was the reason the trial court initially assumed jurisdiction over Child, because the trial court did not expressly discuss it in the judgment.

After Child was taken into protective custody, Mother entered into a social service plan. Mother was ordered to complete the following tasks: (1) initiate and request visitation with Child, no less frequently than semi-monthly; (2) obtain and maintain appropriate housing; (3) enroll in and successfully complete parenting skills training; (4) submit to a psychological evaluation, including a parenting assessment, and comply with any recommended treatment; (5) enroll in and successfully complete family violence education; (6) attend all medical and psychiatric appointments; and (7) enroll in and successfully complete individual counseling.

The court acknowledged Mother had completed the parenting skills training, undergone a psychological evaluation and a psychiatric evaluation, but she had not followed through on the court-ordered individual counseling. Further, evidence was presented that Mother obtained housing and employment, but was unable to maintain them. The caseworker testified that Mother had three different jobs and six different residences since Child was placed with the Division. The trial court also noted that Mother had not maintained or maximized her visitation with Child.

A parent's efforts to comply with a social service plan will provide the court with an indication of the parent's likely efforts in the future to care for the child. *K.A.W.*, 133 S.W.3d 1, 10 (Mo. banc 2004). A lack of effort to comply with a plan, or a lack of success despite effort, can predict future problems. *Id.* at 10. However, a parent's failure to comply with a written service plan does not, in itself, constitute a ground for terminating parental rights. *In the Interest of S.J.H.*, 124 S.W.3d 63, 67 (Mo.App. W.D.2004). Noncompliance is merely a factor to consider in deciding whether the grounds set forth in Section 211.447.4(3) exist. *Id.* The statute requires the trial court to consider "the extent to which the parties have made progress in complying with [the service agreement's] terms," not whether the compliance was full or substantial. *Id.* at 68 (quoting Section 211.447.4(3)(a)).

Mother's psychological and psychiatric evaluations revealed a history of depression and borderline personality, with recurrent suicidal gestures and chronic suicidal ideations. Mother underwent some counseling while Child was in protective custody. As of June 2003, the Division determined Mother was in *full compliance* with her obligation to complete individual counseling. At the time of the termination hearing, the case worker testified Mother was not currently attending counseling sessions.

 A parent's mental condition can support termination of parental rights, *but only if it rises to the level described* under the statute. A mental or emotional condition must be analyzed in three prongs to make an adequate finding:

(1) documentation—whether the condition is supported by competent evidence; (2) duration—whether the condition is permanent or such that there is no reasonable likelihood that it can be reversed; and (3) severity of effect— whether the condition is so severe as to render the parent unable to knowingly provide the child necessary care, custody or control.

*K.A.W.,* 133 S.W.3d at 13.

 "Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior." *Id.* at 9–10. There must be some explicit consideration of whether the past acts provide an indication of the likelihood of future harm. *Id.* at 10. We recognize findings supporting earlier determinations are not irrelevant, but they must be updated to address the extent to which they describe the time of the termination and the potential for future harm. *Id.*

There was no medical evidence presented in the evaluations or at trial that Mother's depression was permanent, or that it

would significantly interfere with her ability to knowingly provide for Child's future necessary care, custody and control. Nor was there any evidence presented as to the severity of Mother's depression. In fact, the only evidence presented at the trial regarding Mother's mental condition was that she was not currently attending counseling sessions. However, it is not clear whether Mother was required to continue those counseling sessions because the Division indicated Mother had *fully complied* with the terms of the social service plan in June 2003.

Moreover, there was no evidence presented at the hearing that Mother harmed or threatened to harm Child since she was taken into protective custody. Child's foster mother testified she allowed Mother unsupervised visits with Child, where Mother took Child from the home during those visits. The foster mother indicated she never saw anything about Child's behavior after the visits that made her concerned about Child's well-being while in Mother's care. Moreover, the Missouri Supreme Court found "[n]othing in this record indicates that Mother threatened [Child] or put her in any danger during this period, nor does any evidence indicate that Mother engaged in other conduct showing she was not an appropriate custodian for her daughter" when Child was in Mother's custody for a brief period in June 2003. The trial court failed to make any explicit consideration of whether Mother's past behavior provided an indication of the likelihood of future harm to Child. Thus, we fail to see a "convincing link" between Mother's past emotional issues and her predicted future behavior.

With respect to the other grounds where the evidence supported the fact that Mother had not fully complied with the social services plan, there was no evidence presented about the changes that occurred

from June 2003 and when the petition to terminate parental rights was filed. The Division found Mother in *full compliance* with *all* of the terms of the social service plan as of June 2003 and was "fit, willing and able and complied with the court order." As a result, the Division requested that the court terminate jurisdiction over Child and return her to Mother and Father. The Missouri Supreme Court found that despite the fact that "no other events relevant to disposition [had] occurred between June 25 and the August 11, 2003, hearing, the Division withdrew its recommendation of permanent placement with Father and Mother and [recommendation of] release of the court's jurisdiction over [Child]." *S.M.H. I*, 160 S.W.3d at 364. The Division did not offer any explanation as to why it withdrew its recommendation, nor did the trial court address the issue. The record is devoid of any evidence which was updated to address the extent to which they describe the circumstances at the time of the termination and the potential for future harm to Child.

The trial court did not discuss how Mother's progress, or lack of progress, with the social service plan impacted her future ability to parent Child. It is not clear how Mother's employment or living arrangements were a potential harm to Child at the time of the termination or would be in the future. *See C.F.C.*, 156 S.W.3d at 431 (reversed and remanded, in part, based on the court's failure to discuss how progress, or lack thereof, impacted the future ability to parent). The evidence in the record fails to establish the "convincing link" between Mother's past behavior and the impact it will have on her future ability to parent Child. We find there was insufficient evidence to support this ground for termination.

■ The third ground the trial court relied upon to terminate Mother's parental rights was a finding that Mother was unfit. Section 211.447.4(6) states a petition to terminate parental rights may be filed when "[t]he parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse...." The trial court will look to see whether there are "specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child." *Id.*

■ The trial court's judgment makes a verbatim recitation of the statutory language provided in Section 211.447.4(6) with respect to its findings that Mother is unfit. The trial court made no factual findings whatsoever with respect to any of the "specific conditions directly relating to the parent and child relationship" that would render Mother unfit. Conclusory findings that merely track the language of the statute are insufficient. *C.F.C.*, 156 S.W.3d at 430. Further, as we have determined with respect to whether Mother abused or neglected Child, we find no evidence to support the finding that Mother poses a future harm to Child or that she is unable to appropriately provide for Child's ongoing physical, mental or emotional needs. Thus, the record before us does not support this basis for termination.

■ Finally, the trial court found that termination of Mother's parental rights was in the best interest of the child. Section 211.447.5 allows for termination of parental rights when the court finds the termination is in the best interest of the child and when it appears by clear, cogent, and convincing evidence that grounds exist for termination pursuant to Subsection 2, 3, or 4 of Section 211.447. We reach the

535

issue of the best interests of the child only after making a determination that one or more of the statutory grounds for termination of parental rights exist. *In re T.A.S.*, 32 S.W.3d 804, 815 (Mo.App. W.D. 2000). We need not reach this issue in light of our holding that none of the statutory grounds relied upon for termination exist. Point II is granted.

Based on the foregoing reasons, there was insufficient evidence to support termination of Mother's parental rights to Child. The judgment with respect to the termination is reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

GARY M. GAERTNER, SR., P.J., and SHERRI B. SULLIVAN, J., Concur.