In the INTEREST OF K.T.K., K.A.K., A.K., and I.K. A.P.K., Appellant,

v.

CRAWFORD COUNTY JUVENILE OFFICE, Respondent.

No. 27862.

Missouri Court of Appeals,
Southern District,
Division Two.

May 23, 2007.

Application for Transfer Denied
June 14, 2007.

Application for Transfer Denied
Aug. 21, 2007.

Donald A. Hale, Steelville, for Appellant.

R. Scott Killen, Oliver, Oliver & Waltz, P.C., Cape Girardeau, for Respondent.

PHILLIP R. GARRISON, Judge.

A.P.K. ("Father"), natural father of K.T.K., K.A.K., A.K., and I.K. (collectively referred to as the "children"), appeals the termination of his parental rights, contend-ing the juvenile court erred when it found that there were statutory grounds to do so, and in not strictly complying with the pro-visions of Section 211.455.[1] We affirm.

M.S. ("Mother"), the children's natural mother, and Father lived together at times, but never married. A.K., was born February 15, 2003, and I.K. was born No-vember 29, 2000. After the birth of their twins K.T.K., and K.A.K., born February 3, 2004, the Crawford County Children's Division ("Children's Division") opened a family centered services case file ("case file") due to concerns about health prob-lems the twins experienced at birth.

In April 2004, while the case file was still open, the Children's Division received a hot line call about the lack of supervision of the four children. At that time, Mother and Father were not living together. The person who made the hot line call related that one of the children had fallen out of the front door of a mobile home, where Mother was living with the children, and struck her head. Mother was not home at the time. The child, A.K., had fallen ap-proximately three or four feet to the ground after another sibling unlocked and opened the door of the mobile home, which had no stairs. A.K. suffered a "pretty good gash" on her forehead as a result of the fall. When Mother returned home she called Father, and he picked up Mother and the children and took them to his apartment. Division of Family Services ("DFS") and law enforcement officers lo-cated the children later that evening at Father's apartment, and arrested him on an outstanding warrant. The children were ordered taken into custody and placed under the jurisdiction of the juve-nile court due to lack of supervision.

On July 8, 2004, an adjudication hearing was held and the juvenile court granted

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

temporary legal and physical custody to the Children's Division. The initial goal of the Children's Division was reunification of the children with their natural parents. In order to facilitate reunification, a written service agreement was prepared for each parent and approved by the juvenile court. The written service agreement for Father included the following specific requirements: (1) to complete a psychological evaluation within ninety days; (2) to complete parenting classes within thirty days; (3) to submit to random drug testing; (4) to participate in an alcohol or drug substance abuse assessment within sixty days; (5) to participate in counseling; (6) to provide a stable home environment; and (7) to provide support for the children in the amount of $50 per month. Father did not sign the written service agreement, nor did he suggest any changes or alternatives he thought necessary before he would sign it.

On June 8, 2005, a petition for termination of parental rights was filed by the Juvenile Office, more than twelve months after the children had come under the jurisdiction of the juvenile court. A hearing was held on the petition on February 28, 2006. At that hearing, the Juvenile Office presented the testimony of witnesses in support of their petition to terminate Father's parental rights.

At the termination hearing, Juvenile Officer Randy Ryno ("Ryno") provided the following testimony regarding Father's compliance with the provisions of the written service agreement, which he had refused to sign: he did not complete a psychological examination as directed or even attend the numerous scheduled appointments that were made for him; he did not attend or participate in the parent aid classes; he refused to submit to a random drug test which was ordered by the court, however he did participate in an alcohol and drug substance abuse assessment, which found that he did not have an alcohol or substance abuse problem; he did not complete counseling; he attended several scheduled visitation periods with the children, but missed several others; he did not keep a stable home environment; and he did not pay any monetary support for the children.

Ryno also testified that during an August 2004 visitation, Mother unplugged apnea monitors worn by the twins, and refused to plug them back in after Ryno directed her to. At that time, Father threatened Ryno, telling him that he was "lucky," while making a fist. Ryno told the court that during Father's supervised visitation, he would act angry, use foul language in front of the children, the staff and foster parents, and, on occasion, storm out early. Ryno described Father's attitude as angry and obstinate.

Juvenile Officer Nic Hutchinson ("Hutchinson") recommended to the juvenile court that it terminate Father's parental rights. Hutchinson expressed concerns about returning the children to Father and Mother due to their living conditions. He explained that his concerns pertaining to Father were based upon his failure to comply with the written service agreement and the social service plan, his anger issues, and the fact that he had verbally threatened one of the foster parents and Ryno.

Tina Lett ("Lett"), a licensed clinical social worker, testified that she appeared at Father's home to conduct a psychological evaluation of both Mother and Father. Father stayed briefly, but left after cursing at Mother telling her that he did not need counseling.

Psychologist Elbert Bolsen ("Bolsen"), who had evaluated I.K., testified that I.K. suffered from bipolar disorder, and reactive attachment disorder. Bolsen explained that children develop reactive at-

tachment disorder due to inadequate "emotional nurturing and support and safety in their environment[.]" Bohen stated that children with this disorder have real difficulty making emotional attachments. Bolsen believed I.K.'s diagnosis of reactive attachment disorder was an indication of "some very poor parenting in the sense of meeting and nurturing [I.K.'s] care and safety and protection."

On June 7, 2006, the juvenile court entered its "Findings of Fact, Conclusions of Law and Judgment," terminating the parental rights of Mother and Father, finding that statutory grounds existed for termination under Sections 211.447.4(2) and 211.447.4(3), and that termination was in the children's best interest.[2] Father appeals this termination.

■ Section 211.447 authorizes the termination of parental rights if the trial court finds at least one statutory ground for termination exists and that termination is in the best interest of the child. Section 211.447.5; *In re C.F.C.*, 156 S.W.3d 422, 426 (Mo.App. E.D.2005). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law. *In re C.F.C.*, 156 S.W.3d at 426. We review conflicting evidence in the light most favorable to the judgment, deferring to the trial court's assessment of witness credibility. *Id.* Because parental rights are a fundamental liberty interest, we strictly construe statutes that provide for the termination of those rights in favor of preserving the natural parent-child relationship. *In re A.S.W.*, 137 S.W.3d 448, 453 (Mo. banc 2004).

■ Grounds for termination must be supported by clear, cogent and convincing evidence. *Id.* "Clear, cogent and convinc-

ing evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *Id.* Where the juvenile court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment, we need only find that one of the statutory bases was proven and that the termination was in the best interest of the child. *In re D.M.B.*, 178 S.W.3d 683, 686 (Mo.App. S.D.2005).

■ In his first point, Father contends the evidence was insufficient to support the termination of his parental rights under both statutory grounds relied on by the trial court: Section 211.447.4(2), for neglect, and Section 211.447.4(3), for "failure to rectify." Because we find clear, cogent and convincing evidence in the record to support the termination on the ground of neglect, we need not address the sufficiency of the evidence regarding "failure to rectify."

■ Section 211.447.4(2) provides that abuse or neglect of a child is a basis for the termination of parental rights. In determining whether termination is warranted for abuse and neglect, the trial court is required to consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be

**2.** This Court has affirmed the termination of Mother's parental rights in a separate appeal.

treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

Section 211.447.4(2). Proof of any one of these factors is enough to support the termination of parental rights. *In re C.F.C.*, 156 S.W.3d at 427. "However, the trial court's findings must be specific enough for a reviewing court to be assured that the trial court properly considered the factor in deciding to terminate parental rights. A conclusory finding may be grounds for reversal." *Id.* (internal citations omitted).

Here, the juvenile court made the required findings as to each subsection under Section 211.447.4(2). It found no evidence as to subsections (a)-(c). Regarding Section 211.447.4(2)(d), the court found as follows:

[T]here has been a repeated or continuous failure by [Father], although physically or financially able to provide the child[ren] with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the children's physical, mental, or emotional health and development in that [Father] has failed to comply with the

… written service agreements offered by the Department of Social Services, Children's Division which was filed with this court on 23rd day of August 2004 and [Father] has failed to comply with the recommendations of professionals and refused to follow special instructions on how to care for the children's mental and physical needs. [Father] has difficulties in making appropriate decisions regarding the children's mental and physical needs, in that [Father] refuses to believe that there are any mental or physical problems with the said children and refused to keep the heart monitors plug[ged] in during visitations. Both said children … were born with Respiratory Distress Syndrome, Atrial Septal Defect, Heart Apnea, and Gastro esophageal Reflux, which requires special attention and needs, that [Father] has not attempted to provide or refused to work with professionals to take proper care of said children since coming into care. [I.K.] has been diagnosed with ADHD and Reactive Attachment Disorder of Early Childhood, Inhibited Type. Reports and recommendation of [I.K.'s] professional therapist state that [I.K.] has made significant progress since coming into and has also begun to trust his caregivers and has shown maturity and stability in social interactions. It is suggested that these positive outcomes are believed to be due to [I.K.] being in a more nurtured, safe, and consistent care[-]giving home environment. Any disruption or change of this environment will most likely result in regression to his previous behaviors and loss of progress he has been able to achieve so far in social, academic and family atmospheres. [I.K.] is a special needs child and requires constant and consistent attention and supervision.

Father argues that "[t]he evidence does not support the use of Section 211.447.4(2)(d) to terminate [Father's] parental rights as there is no evidence of abuse or neglect by [Father] prior to the children coming under the jurisdiction of the juvenile court." Father explains, "[t]he real issue before [this] Court is whether or not in a termination of parental rights case, the grounds to support termination can be developed or created after the [juvenile court] assumes jurisdiction."

We note that Section 211.447 does not limit termination of parental rights only to those grounds which arose prior to the juvenile court's assumption of jurisdiction. "The juvenile officer or the division may file a petition to terminate the parental rights of the child's parents when it appears that one or more of the following grounds for termination exist[.]" Section 211.447.4. Those grounds include abuse or neglect, and "failure to rectify." Section 211.447.4. "The juvenile court may terminate the rights of a parent ... if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section." Section 211.447.5. While the grounds for termination must necessarily exist at the time the petition for termination is filed, Section 211.447 does not mandate that those grounds must have existed prior to the juvenile court's assumption of jurisdiction. Certainly circumstances and behaviors arising after the juvenile court's assumption of jurisdiction are highly relevant in determining whether grounds for termination exist. In fact, "[t]ermination for abuse and neglect must be based on conduct at the time of termination." *In Interest of K.W.*, 167 S.W.3d 206, 211 (Mo.App. E.D.2005). While it appears from the record that the juvenile court assumed jurisdiction of the children largely due to the neglect of Mother, and at a time when the children were residing with Mother, we hold that neglect on the part of Father, arising after the juvenile court's assumption of jurisdiction, may form the basis for the termination of Father's parental rights if supported by clear, cogent and convincing evidence.

"To terminate under [Section] 211.447.4(2)(d), the petitioner must show that the parent has not fulfilled the affirmative duty to support, communicate with and visit the child and to show that the parent is committed to the child by showing an interest." *In re Q.M.B.*, 85 S.W.3d 654, 660 (Mo.App. W.D.2002). Here, the record supports the juvenile court's determination that Father has not performed his affirmative duties towards the children in several respects, including not properly addressing the children's medical needs. When A.K. was brought to Father's apartment with a gash on her forehead, he did not seek medical treatment for her. Additionally, as the juvenile court makes clear in its judgment, the twins, K.T.K. and K.A.K., were born with very serious medical problems, which Father and Mother did not take seriously as indicated by the taking off of the twins' apnea monitors during visitation. Father's refusal to recognize the seriousness of his children's health conditions is evidence of his lack of commitment towards the children. *See In re J.L.M.*, 64 S.W.3d 923, 925–26 (Mo.App. S.D.2002).

Additionally, we note that as a part of the written service agreement imposed by the juvenile court, Father was ordered to pay $50.00 per month to support his children. However, Father paid no support while the children were in the custody of the Children's Division, even though he was employed for much of that time. While Father did not sign

the written service agreement, "a parent is obligated to provide support even in the absence of demand by DFS for such payment." *In re J.J.P.*, 113 S.W.3d 197, 205 (Mo.App. S.D.2003)(abrogated on other grounds by *In re M.D.R.*, 124 S.W.3d 469, 472 (Mo. banc 2004)). "The financial support of a minor child is a continuing parental obligation." *In re S.M.H.*, 170 S.W.3d 524, 531 (Mo.App. E.D.2005). If a parent cannot pay for all of his or her child's financial needs, the parent still has a duty to contribute as much as he or she reasonably can. *Id.* Father's failure to financially support his children may form the basis for termination of his parental rights pursuant to Section 211.447.4(2)(d). *See In re E.T.C.*, 141 S.W.3d 39, 49 (Mo. App. E.D.2004).

Finally, we observe that Father's visitation with the children was inconsistent. Father was late for visitation on several occasions, and visitations were often stopped due to inappropriate behavior. In failing to take seriously the medical needs of his children, failing to financially support his children, and attending visitation only sporadically, Father has not fulfilled his affirmative duty to support, communicate with and visit his children and has not shown that he is committed to the children by showing an interest.

The juvenile court did not err in terminating Father's parental rights pursuant to Section 211.447.4(2).[3] Father's first point is denied.

 In his second point, Father argues that the juvenile court erred in terminating his parental rights, because it did not comply with the requirement of Section 211.455.1 that, "[w]ithin thirty days after the filing of the petition, the juvenile officer shall meet with the court in order to determine that all parties have been served with summons and to request that the court order the investigation and social study." We disagree.

 "[I]n termination cases, literal and strict compliance with statutory authority is required." *In Interest of S.J.*, 849 S.W.2d 608, 612 (Mo.App. W.D.1993). In this case, the petition for termination of parental rights was filed on June 8, 2005. Father was served with a summons on June 27, 2005. The juvenile court ordered the investigation and social study on September 2, 2005. Father complains on appeal that the juvenile court's order relating to the investigation and social study was not entered until approximately three months after the petition for termination was filed. However, Section 211.455.1 only requires that the juvenile officer *meet* with the court within thirty days after the filing of the petition, but imposes no requirement that the juvenile court order the investigation and social study within that time. While, there is no indication in the record, when the required meeting was held, we note that Section 211.455.1 imposes no requirement that this meeting be held on the record. Given the facts before this Court, we cannot say that the juvenile court failed to comply with Section 211.455.1. Therefore, this point is denied.

The judgment of the juvenile court terminating Father's parental rights is affirmed.

Barney, and Lynch, JJ., concur.

---

**3.** Father does not contest the juvenile court's finding that termination of his parental rights was in the children's best interest.