247 S.W.3d 157 (2008)
In the Interest of N.A.H. (D.O.B: 04-21-04) A Child Under Seventeen Years of Age.
No. 28679.
Missouri Court of Appeals, Southern District, Division Two.
March 13, 2008.
Lindell P. Dunivan of Farmington MO, for appellant.
R. Scott Killen of Ironton MO, for respondent.
DON E. BURRELL, Judge.
B.H. (Mother) appeals the judgment terminating her parental rights over her son, N.A.H. (Son), born April 21, 2004. Mother alleges the trial court erred by ordering the investigation and social study required by Section 211.455[1] before the petition to terminate parental rights was filed and in finding there was sufficient evidence to support the termination. We will review only Appellant's first point as it is dispositive and requires that the judgment be reversed.

Standard of Review
On appeal, this Court will affirm the trial court's termination of parental rights unless there exists no substantial evidence to support the decision, the trial court erroneously declared or applied the law, or the decision is against the weight of the evidence. In re S.M.H., 160 S.W.3d 355, 362 (Mo. banc 2005); Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).

Relevant Facts
On June 22, 2004, a judge of the Juvenile Division of the Circuit Court of Iron County, Missouri (Juvenile Division) found probable cause to believe that Son needed the care and protection of the court and entered its order making Son a "Temporary Ward of the Iron County Juvenile Court." That order also granted legal and physical custody of Son to "the Iron County, Missouri Division of Children's Services" (Children's Division). Approximately two days later, Son was taken from Mother and placed in foster care.
On May 19, 2006, just under two years after Son was taken from Mother's custody, the Juvenile Division held a Permanency Review Hearing and found that it was appropriate and in Son's best interest to change the existing case goal from reunification with Mother[2] to termination of Mother's parental rights and adoption.[3] *159 The docket entry connected with the May 19, 2006 Permanency Review Hearing also directed the Juvenile office to file a petition to terminate parental rights within sixty days.
Just over two months later, on July 25, 2006, the Juvenile Division entered its "Order for Investigation and Social Study." This order directed the Children's Division (or any of its contracted providers) to prepare said study within sixty days and stated it was being ordered "in accordance with Section 211.455.3."
On August 16, 2006  twenty-two days after the Juvenile Division ordered the Investigation and Social Study (Study)  a Deputy Juvenile Officer of the Forty-Second Judicial Circuit of Missouri (Juvenile Officer) filed his petition to terminate Mother's parental rights. The Study was filed with the Juvenile Division on August 23, 2006.
Mother filed a formal answer to the petition to terminate parental rights on November 2, 2006 and the case was eventually tried and submitted to the court on January 29, 2007.[4] The Study was not received into evidence at trial and the Juvenile Division makes no reference to it in its April 17, 2007 judgment terminating Mother's parental rights.

Analysis
Section 211.455.1 provides, in relevant part, that "[w]ithin thirty days after the filing of the petition [to terminate parental rights], the juvenile officer shall meet with the court . . . to request that the court order the investigation and social study." (emphasis added). Section 211.455.3 then directs that "a written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child." (emphasis added).
The statutes governing the termination of parental rights must be strictly and literally complied with. Interest of K.T.K. v. Crawford County Juvenile Office, 229 S.W.3d 196, 200 (Mo.App. S.D. 2007); In re N.M.J., 24 S.W.3d 771, 781 (Mo.App. W.D.2000).
In re C.W., 211 S.W.3d 93 (Mo. banc 2007) directly addresses Mother's point and is controlling. In In re C.W., the "Missouri children's division" filed a "Termination of Parental Rights Investigation and Social Study" four days before the Juvenile office filed its petition to terminate parental rights. Id. at 96. After the trial court entered a judgment terminating the mother's parental rights, the mother appealed asserting that the trial court violated section 211.455 when it accepted the study prior to the actual filing of the petition to terminate parental rights. Id. at 96-97. After reviewing section 211.455, our supreme court held that the use of the word "shall" makes the statute mandatory rather than directory and, therefore, "section 211.455 requires the circuit court to order the mandatory investigation and social study after the petition is filed" and after the trial court has met with the juvenile officer. Id. at 97-8.
In so holding, our high court also dispelled any notion that the appealing parent must show that some sort of prejudice *160 resulted from a failure to follow the literal requirements of the statute and finished its analysis by flatly stating: "[f]ailure to strictly comply with section 211.455 is reversible error." Id. at 98.
In the case at bar, the Juvenile Division ordered the investigation and study before the petition to terminate parental rights was filed. Additionally, the record contains no evidence that the Juvenile Division met with a juvenile officer before it ordered that the study be made. The Juvenile Division's failure to strictly comply with the requirements of section 211.455 constitutes reversible error. Id. Therefore, the Juvenile Division's judgment is reversed and the cause is remanded for action not inconsistent with this opinion.
LYNCH, C.J., and RAHMEYER, J., Concur.
NOTES
[1] All statutory references are to RSMo.2000 unless otherwise indicated.
[2] The court had previously entered a judgment on September 29, 2005 terminating the parental rights of Son's biological father based on the father's voluntary consent thereto.
[3] The court's written findings in connection with that hearing note that the child had "been in care for 22 of the most recent 22 months" and that "termination of parental rights is mandatory" because of that circumstance. We assume the court actually meant that the filing of a petition to terminate parental rights was mandated by this portion of Section 211.447.2 and not that it had predetermined that a judgment terminating parental rights would be required by that finding alone.
[4] The trial was actually conducted over the course of two separate days with the first occurring on November 21, 2006. Due to what this court assumes was the press of other previously scheduled matters, the second and final day of trial could not be held before the January 29, 2007 date.